State v. Wilson.

## STATE OF TENNESSEE v. W. P. WILSON.

1. DECREE PRO FORMA. *Not admissible.* *When.* A decree *pro forma*, the record showing that the court below was not advised upon the law of the case, but gave the decree in order that the cause might go to the Supreme Court for its adjudication of the questions submitted, is not admissible under our system.

2. AGREED CASE. An agreed case, gotten up without any foundation in fact, would be a fraud upon the court, and treated accordingly at any stage of the cause.

3. SAME. But if the demand is genuine, the case is not fictitious merely because it is worded without reference to the rights of third parties.

4. PLEADINGS. Under the recent act of the Legislature, providing for the appointment of a receiver and back tax collector to file a general creditor's bill in the name of the State, on behalf of all creditors, against delinquent tax payers, and expressly limiting the collection of the taxes in the mode and time prescribed to such portion of the taxes as are not subject to the vested rights, equities, or liens of creditors, previously acquired, it seems, that a bill will not lie against a single tax payer.

---

### FROM SHELBY.

---

Appeal from the Chancery Court at Memphis. W. W. McDOWELL, Ch.

M. MERRIWETHER and C. F. VANCE for complainants.

L. W. FINLEY, W. M. RANDOLPH and MYERS & SNEED for defendants.

COOPER, J., delivered the opinion of the court.

The Legislature, by an act passed on the 29th and approved by the Governor on the 31st of January, 1879, enacted that all the acts under which the city of Memphis was chartered, or its charter altered or

amended, be repealed, enumerating the acts; that the charters of all municipal corporations within the State having a population of 35,000 inhabitants, or over, by the federal census of 1870, be repealed; and, by a separate section, repeating the repeal of the last clause, authorized the Governor to ascertain and declare by proclamation to what corporation that section applied. The Governor, by proclamation dated 31st of January, 1879, declared that the act applied to the city of Memphis alone.  By the 4th section of the act, all power of taxation, previously vested in the authorities of said municipal corporations, was withdrawn and reserved to the Legislature, and all the public buildings, squares, streets, etc., and all property, real and personal, used by such corporations for municipal purposes, were transferred to the custody and control of the State, to remain public property for the uses to which such property had been previously applied.

By another act, passed and approved on the same days, the several communities embraced in the territorial limits of all municipal corporations in the State as have had or may have their charters abolished, or may surrender the same under the provisions of the act, are created "taxing districts," in order to provide the means of local government for the peace, safety, and general welfare of such districts; the act provides "agencies and governing instrumentalities" for these districts, and directs "that the necessary taxes for the support of the government thus established shall be imposed directly by the General Assembly of the State, and not otherwise."  By the 14th section, all the

property, real and personal, theretofore used by such corporations for the purpose of government, are transferred to the custody and control of the Board of Commissioners of the taxing district, to remain public property for the same uses. And further, "that all indebtedness for taxes or otherwise, whether in litigation or otherwise, due to the said municipalities, shall vest in and become the prop 'y of the State, to be disposed of for the settlement of ､ ⌐ debts of said extinct municipalities as shall be herea ⌐ provided by law." This provision is repeated in the ⌐+h section of an act passed on the 12th and approved on the 13th of March, 1879, amending the previous act. By another act passed on the 13th and approved on the 14th of March, 1879, the Governor was authorized to appoint an officer for such extinct corporations, to be known as a receiver and back tax collector, who shall take the oath required by other collectors of public revenue, and give bond as prescribed by the 4th section of this act. The receiver and back tax collector is "empowered and authorized," for the purpose of collecting the revenue embraced in the act, to file a general creditor's bill in the name of the State in behalf of all creditors, against all the delinquent tax payers, "the object being to make one proceeding embrace the whole taxes of such extinct corporation, and all pending suits are to be revived in the name of the State, and consolidated with the general proceedings," and form part thereof. The court is clothed with power to settle and adjust all equities, priorities, and liens, and give all relief, both to defendants and

creditors, as if separate suits had been brought; sell property for the collection of taxes, etc.

By section 5, taxes imposed prior to 1875 may be settled in the valid indebtedness of the city at rates prescribed, and so of taxes imposed after 1874, "when there is no lien or equity requiring the same to be paid in current money," any question raised to be determined by the court, on motion.

By section 6 the receiver is limited to the collection of one-fifth of the taxes due from any individual annually, so as to distribute the whole through five equal annual installments, commencing with the qualification of the receiver, "provided, however, that nothing herein contained is intended to interfere with any vested right which entitles the party having such right to a speedier collection, but only to extend the indulgence where the State has the power to do so without interfering with vested rights."

By section 7, the funds collected are to be paid out, from time to time, to those entitled, "as the chancery court may adjudge and decree."

By section 13, it is provided "that the proceedings in all suits now pending for the collection of taxes due said extinct municipalities, shall be suspended until the filing of the general creditor's bill, and the consolidation provided for in this act." The Governor appointed Minor Merriwether "receiver and back tax collector" under the preceding act, who gave bond and qualified as required by law, and on the 31st March, 1879, filed this bill. The bill is not the general creditor's bill as prescribed by the statute, but a bill

against the defendant, W. P. Wilson, a solitary tax payer, and is in the nature of an agreed case, gotten up, obviously, for the purpose of obtaining the opinion of the court upon the points of law presented, in advance of the general bill. These points are, first, whether the acts and proclamation of the Governor confer lawful authority to collect the back taxes through an officer appointed as therein prescribed. Second, whether the officer can, in payment of the taxes prior to 1875, exact more than the face value of any valid indebtedness of the extinct municipality, or must he accept such indebtedness at its full face value. The Chancellor tells us in the record, under his hand, that he has not had time to investigate the constitutional questions involved in this cause, but as the presumption is in favor of the constitutionality of the statute, he gives a decree for the complainant, "in order that the cause may go to the Supreme Court for its adjudication of the questions submitted." A decree is entered accordingly, from which the defendant appealed. Pending the proceedings below, five solicitors of the Memphis bar presented a petition, in which they say, in substance, that they represent as counsel "divers creditors of the city of Memphis, whose names will be given if required," many of whom have suits pending in the Circuit Court of the United States for the Western District of Tennessee, against the city of Memphis and others, to have the assets of the city, including the taxes, applied to the payment of the debts of the city, including the debts due to the clients of the petitioners; that a receiver has been appointed by

that court to collect the taxes due the city, including those due by the defendant, Wilson; that the agreed case omits all mention of these facts; that Wilson has no interest in the questions involved in common with the clients of the petitioners, or adverse to said Mer riwether, and that his interest and sympathies, as peti tioners believe, are really, in many respects, with Mer-riwether, and that he desires and hopes that Merri-wether may obtain a decree in his favor "as to several of the questions involved." The petitioners pray the court "to dismiss the said agreed case, and to decline proceeding therein except upon terms which will secure petitioners' clients a full and fair hearing on all the facts material to the merits of the question in which they have an interest." The Chancellor refused to entertain the petition, which was thereupon embodied in a bill of exceptions, but no appeal was taken by the petitioners. They have, however, appeared in this court, and, now, changing their base of operations, ask that the petition be taken as an original affidavit in this court, upon which to found a motion on their part to dismiss the agreed case upon the ground that it is not an actual case.

Whether third persons can be made parties to a suit in chancery upon their own application, and against the wishes of those who are actually litigants, is a question about which there may be some doubt, but that such persons can apply to have a suit between litigants dismissed, or to induce the court to decline to proceed therein, because the applicants have an interest in the questions involved, has, perhaps, never, or rarely ever, been heretofore

tested.    That the solicitors of such parties, without
the parties themselves coming before the court, should
have any such right, cannot be seriously urged.    The
petitioners are not, however, before this court upon
that application, no appeal having been taken by them
from the action of the Chancellor refusing to entertain
their application.    They come now as *amici curiæ*, to
suggest, upon the strength of their petition, treated as
an affidavit in this court, that there is no real litiga-
tion in the suit before us.    No doubt this court would
take notice of the fact, no matter how brought before
it, that an action between parties, or upon an agreed
statement, was fictitious, for the province of a court
is to decide, not advise, and to settle rights, not to
give abstract opinions; moreover, a case gotten up
without any foundation would be a fraud upon the
court, and a contempt upon the part of those impli-
cated.    The petition, however, if we treat it as an
affidavit filed in this court, does not pretend that the
demand in controversy is fictitious.    Its burden merely
is that the agreed case is so worded as to ignore the
rights of petitioners' clients.    But if the demand is
genuine, parties are not called upon to make their
cases with a view to the rights of others, and it is
an axiom in the law that the rights of others are not
affected by a decision between particular parties.    The
proceedings are *res inter alios acta*, only conclusive be-
tween those persons before the court and their privies.

The difficulty in the way of the litigants in this
suit grows out of the record itself, and the case made by
the agreement.    The record shows that the Chancellor

has not passed upon the most important questions involved, and that the decree is *pro forma,* in order that the cause may come before this court the sooner for its adjudication; but a decree *pro forma,* the record showing that the court below was not advised upon the law of the case, is inadmissible under our system. *Read* v. *Bobb,* 4 Yer., 66.  "It was intended," as has been well said by Judge Caruthers, "in all controversies between parties, that they should have the advantage of two tribunals, first, the court established by the Legislature, and then, by appeal, the court of last resort established by the Constitution."     *Miller* v. *Conlee,* 5 Sneed, 432.  It is obvious that this "advantage" should be most sedulously secured in cases involving great constitutional questions.

For another reason, the questions so ably argued by the learned counsel cannot be settled in this proceeding. If the points submitted involved only the right of the complainant to collect, and of the defendant to pay the taxes sued for, the court might safely act.     For the result would only affect the actual litigants, but the agreed case calls upon the court to determine whether the mode of payment of the taxes prescribed by the statute is obligatory.     The statute itself, under which the action is brought, expressly, as we have seen, reserves vested rights in the taxes, and any lien or equity requiring them to be paid in other money, or more speedily than is prescribed.     The intention of the Legislature is unmistakable to bring before the court, in the one suit directed to be brought, and with which all previous suits are to be consolidated,

all parties interested with a view to the adjustment of conflicting rights, and that any person having a vested right, a lien, or an equity, on any portion of the taxes, might assert it, and be heard on all questions involved; it is true, the defendant makes no such objection, and, in the absence of such objection, ordinarily the power implied in the appointment of a back tax collector would include the right to sue for the taxes, and the right to file the general bill would be construed as merely enabling and extending the collector's power. The intent of the Legislature is, however, so manifest that no decision should be made until all parties are before the court, and especially that parties having vested rights, equities, or liens, should be heard, and that intent is so plainly just that we are inclined · to think that the receiver cannot run counter to it. We are the better satisfied with the conclusion reached, as in no event could the decision, on the facts agreed, in the face of the statute, extend beyond the question of the repeal of the charter of Memphis, and the right of the receiver and back tax collector appointed to receive the taxes, points about which there is, probably, no serious difficulty, and which would determine nothing as to the rights of third persons over the taxes, either before or after collection.

The cause will be stricken from the docket as prematurely brought to this court, and the appellant will pay the costs of this court.