IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 20, 2016 Session

## LARRY E. PARRISH, P. C. v. NANCY J. STRONG, ET AL

**Appeal from the Chancery Court for Lincoln County**
**No. C13039  J. B. Cox, Chancellor**
_____

**No. M2015-02495-COA-R9-CV – Filed October 7, 2016**
_____

This is a Tennessee Rule of Appellate Procedure 9 Interlocutory appeal.  Upon further review, we have determined that none of the issues certified for interlocutory appeal are properly before us.  Accordingly, we vacate our order granting interlocutory appeal and dismiss the appeal.

**Tenn. R. App. P. 9 Interlocutory Appeal; Appeal Dismissed**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ANDY D. BENNETT and ARNOLD B. GOLDIN, JJ., joined.

Timothy T. Ishii and Max D. Fagan, Nashville, Tennessee, for the appellant, Nancy J. Strong.

Larry Parrish, Memphis, Tennessee, Pro Se.

**OPINION**

**I. Background**

The instant case has a long and complicated procedural history, including a previous appeal to this Court.  *See **Parrish v. Dodson, et al.**,* No M2011-00349-COA-R3-CV, 2011 WL 4529607 (Tenn. Ct. App. Sept. 29, 2011).  As is relevant to the instant appeal, Appellee Larry Parrish, PC filed the instant lawsuit against Appellant Nancy J. Strong as an "In Rem Complaint to Trace and Recovery Res." By the complaint, Appellee sought to prosecute a chose-in-action clause that was assigned by Ms. Strong in payment of attorney's fees owed to Appellee for filing a legal malpractice action against an attorney, who previously represented Ms. Strong. Although Appellee sought affirmative relief from Ms. Strong, she was only

identified in the complaint as a "non-party respondent," and no summons was issued or served on her. Nonetheless, in response to the complaint, Ms. Strong filed an answer and counter-complaint against Larry Parrish, PC, alleging legal malpractice, breach of contract, and breach of fiduciary duty. In the alternative, Ms. Strong sought to invalidate the chose-in-action assignment clause of the parties' agreement. The case was bifurcated and tried to a jury.

On September 2, 2014, the jury returned a verdict on the first phase of the trial. The verdict form reflects the jury's finding that, although the parties' agreement was valid, Mr. Parrish's firm had breached the contract. The jury awarded Ms. Strong compensatory damages to reimburse her for attorney's fees and costs of the action. The court reduced the jury's compensatory damages verdict to judgment of $194,978.70 on November 4, 2014. In addition to compensatory damages, the jury also found that Ms. Strong was entitled to punitive damages, the amount of which would be determined in the second phase of the bifurcated trial.

Before the second phase of the trial was set, Ms. Strong filed various motions in an attempt to pierce the corporate veil, so as to have Mr. Parrish held personally liable for the damages assessed against his firm. Ultimately, the trial court denied Ms. Strong's motions to pierce the corporate veil. However, by the time the veil question had been adjudicated, twelve months had expired since the jurors were first summoned for jury service. Ms. Strong moved the trial court to reconvene the jury that had decided the first phase of the case so that it could also decide the amount of punitive damages. By order of December 12, 2015, the trial court held that it did not have jurisdiction to re-empanel the same jury. The December 12, 2015 order provides:

> Upon review of [Ms. Strong's] oral motion to reconvene the current jury, or in the alternative, empanel a different jury to assess the proper amount of punitive damages to be awarded against [Appellee], this Court rules that, pursuant to T.C.A. § 22-1-101, this Court does not have jurisdiction to require the jurors, summoned to serve in this case in July 2014, to reconvene for the punitive damages stage of these proceedings beyond the twelve months next preceding the date of their summons to serve. Furthermore, this Court rules that it is premature in these proceedings to consider empanelling a new jury to assess the proper amount of punitive damages to be awarded against [Appellee].

Both parties moved the trial court for permission to file an interlocutory appeal. The trial court granted the motion. This Court granted the interlocutory appeal by order entered on February 1, 2016.

## II. Issues

In our February 1, 2016 order granting the interlocutory appeal, this Court certified the following issues for review:

1. Whether the trial court may require the jurors, summoned to serve in July of 2014, to reconvene for the punitive damage stage of the proceedings even though more than twelve months have passed since the date of their summons was served.

2. Whether, if the original jury cannot be reconvened, the trial court may empanel a new jury to assess the proper amount of punitive damages to be awarded.

3. Whether the answers of the jury to the questions submitted and the jury verdict are valid and binding on the parties if a separate jury is empanelled to decide the amount of punitive damages, if any, to award.

## III. Analysis

Before addressing the foregoing issues, we first address whether this appeal is properly before this Court for interlocutory review. Subject matter jurisdiction concerns the authority of the court to hear a matter and cannot be waived. *Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 639 (Tenn. 1996). The Court may consider the question of subject matter jurisdiction *sua sponte*. Tenn. R. App. P. 13(b); *Ruff v. State*, 978 S.W.2d 95, 98 (Tenn. 1998). Tennessee Rule of Appellate Procedure 9 provides for review of interlocutory orders only in certain limited instances. Rule 9 states, in pertinent part:

(a) **Application for Permission to Appeal; Grounds**. Except as provided in Rule 10, an appeal by permission may be taken from an interlocutory order of a trial court . . . only upon application and in the discretion of the trial and appellate court. In determining whether to grant permission to appeal, the following, while neither controlling nor fully measuring the courts' discretion, indicate the character of the reasons that will be considered: (1) the need to prevent irreparable injury, giving consideration to the severity of the potential injury, the probability of its occurrence, and the probability that review upon entry of final judgment will be ineffective; (2) the need to prevent needless, expensive, and protracted litigation, giving consideration to whether the challenged order would be a basis for reversal upon entry of a final judgment, the probability of reversal, and whether an interlocutory appeal will result in a net reduction in the duration and expense of the litigation if the challenged order is reversed; and (3) the need to develop a uniform body of law, giving consideration to the existence of inconsistent orders of other courts and whether the question presented by the challenged order will not otherwise be

reviewable upon entry of final judgment. Failure to seek or obtain interlocutory review shall not limit the scope of review upon an appeal as of right from entry of the final judgment.

In addition to the Tennessee Rule of Appellate Procedure 9 criteria for granting interlocutory appeals, in order for this Court to consider a case, the case must be justiciable. The doctrine of justiciability was discussed by the Tennessee Supreme Court as follows:

>Tennessee's courts believed that "the province of a court is to decide, not advise, and to settle rights, not to give abstract opinions." *State v. Wilson*, 70 Tenn. 204, 210 (1879); *see also* **Gilreath v. Gilliland**, 95 Tenn. 383, 385-86, 32 S.W. 250, 251 (1895); *Prichitt v. Kirkman*, 2 Tenn. Ch. 390, 393 (1875).
>Accordingly, they limited their role to deciding "legal controversies." *White v. Kelton*, 144 Tenn. 327, 335, 232 S.W. 668, 670 (1921). A proceeding qualifies as a "legal controversy" when the disputed issue is real and existing, *see State ex rel. Lewis v. State*, 208 Tenn. 534, 536-37, 347 S.W.2d 47, 48 (1961), and not theoretical or abstract, *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 192 (Tenn.2000); *Miller v. Miller*, 149 Tenn. at 474, 261 S.W. at 968; *State ex rel. Lewis v. State*, 208 Tenn. at 538, 347 S.W.2d at 48-49, and when the dispute is between parties with real and adverse interests. *Memphis Publ'g Co. v. City of Memphis*, 513 S.W.2d 511, 512 (Tenn.1974).
>Justiciability doctrines assist the courts in determining whether a particular case presents a legal controversy. The justiciability doctrines recognized by Tennessee courts mirror the justiciability doctrines employed by the United States Supreme Court and the federal courts. . . . These doctrines include: (1) the prohibition against advisory opinions, (2) standing, (3) ripeness, (4) mootness, (5) the political question doctrine, and (6) exhaustion of administrative remedies.

*Norma Faye Pyles Lynch Family Purpose LLC v. Putnam County*, 301 S.W.3d 196, 203 (Tenn. 2009).

In the instant case, based on the parties' concession at oral argument (discussed *infra*), we conclude that issue one certified for interlocutory review is no longer in dispute. "A case must remain justiciable (remain a legal controversy) from the time it is filed until the moment of final appellate disposition." *Id*. at 204 (citing *State v. Ely*, 48 S.W.3d 710, 716 n. 3 (Tenn.2001); *Alliance for Native Am. Indian Rights, Inc. v. Nicely*, 182 S.W.3d [333,] at 338 [(Tenn. Ct.. App. 2005)]; 1 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law § 2.13(c)(ii), at 261 (4th ed. 2007)). "A moot case is one that has lost its justiciability either by court decision, acts of the parties, or some other reason occurring after commencement of the case." *Id*. (citing *West v. Vought Aircraft Indus., Inc.*, 256 S.W.3d

[618,] at 625 [(Tenn. 2008)]; ***McCanless v. Klein***, 182 Tenn. [631,] at 637, 188 S.W.2d [745,] at 747 [(Tenn. 1945)]; ***McIntyre v. Traughber***, 884 S.W.2d [134,] at 137 [(Tenn. Ct. App. 1994)]). "A case will be considered moot if it no longer serves as a means to provide some sort of judicial relief to the prevailing party." ***Id***. (citing ***Knott v. Stewart County***, 185 Tenn. [623,] at 626, 207 S.W.2d [337,] at 338-39 [(Tenn. 1948)]; ***Bell v. Todd***, 206 S.W.3d 86, 96 (Tenn. Ct. App. 2005); ***Massengill v. Massengill***, 36 Tenn. App. 385, 388-89, 255 S.W.2d 1018, 1019 (1952)). In other words, there must be an actual dispute between parties with real and adverse interests. ***Memphis Publ'g Co. v. City of Memphis***, 513 S.W.2d 511, 512 (Tenn.1974).

Concerning issue one, at oral argument of this case, the parties conceded that the trial court had not erred in declining to reconvene the jury that decided the first phase of the bifurcated trial for the purpose of determining the amount of punitive damages in the second phase of the trial. Specifically, Ms. Strong's attorney, Mr. Ishii, stated: "In a rare [] concurrence . . . both parties agree that, under Tennessee Code [22]-1-101, the trial court does not have the power to re-summon jurors [that had originally been] summoned." Tennessee Code Annotated Section 22-1-101 provides:

> It is policy of this state that all qualified citizens have an obligation to serve on petit juries or grand juries when summoned by the courts of this state, unless excused. Every person eighteen (18) years of age, being a citizen of the United States, and a resident of this state, and of the county in which the person may be summoned for jury service for a period of twelve (12) months next preceding the date of the summons, is legally qualified to act as a grand or petit juror, if not otherwise incompetent under the express provisions of this title.

Following Mr. Ishii's statement that the foregoing statute negates a trial court's "power to re-summon jurors" after twelve months, this Court asked Mr. Ishii the following question: "[The statute] says [the jury] can't be summoned for jury service. [It] doesn't say they can't be further empaneled to complete a case that they started within that one year period. You don't see any difference in that?" Mr. Ishii answered, "No, Your Honor, I don't." Mr. Ishii then explained his interpretation of the statute to be that, "from the time [a juror] begins service as actual jurors, that's when the time starts running."

During his argument, Mr. Larry Parrish, on behalf of Larry E. Parrish, PC, attempted to answer the panel's question as follows:

> Would [the jury] be summoned if they were continuing in a trial, which had started, even though the twelve months ran out. I would think that there is not a summons, a re-summoning of them, but. . . the way I read the statute is that they just run out of authority after twelve months. So . . . would they have to be dismissed? My understanding of the law is that they would.

- 5 -

Without rendering an opinion as to whether the parties' interpretation of Tennessee Code Annotated Section 22-1-101 is correct, in light of the parties' mutual agreement that the trial court was correct in denying the motion to re-empanel the original jury, there is no longer a "dispute . . . between parties with real and adverse interests." ***Memphis Publ'g Co.***, 513 S.W.2d at 512. In the absence of a challenge to the trial court's ruling on issue one, we decline to conduct an interlocutory review of this issue.

As to the remaining issues, as set out above, the trial court did not decide the issue of whether a new jury should be empaneled for the second phase of the trial. Rather, the court stated: "[T]his Court rules that it is premature in these proceedings to consider empanelling a new jury to assess the proper amount of punitive damages to be awarded against [Appellee]." In short, the trial court neither empaneled a new jury, nor specifically declined to do so. In failing to make a decision, the trial court appears to seek advice from this Court as to how to proceed with the second phase of its bifurcated trial. A trial court cannot grant an interlocutory appeal for the sole purpose of obtaining an advisory opinion from this Court. Rather, the Court of Appeals is a reviewing court, which may only render an opinion after the trial court has made some determination. To do otherwise, would require this Court to make an initial determination as to what law controls. This "is not the province of the Appellate Court in an interlocutory appeal." ***Farmers Mut. of Tennessee v. Atkins***, No. E2011-01903-COA-R9-CV, 2012 WL. 982998 (Tenn. Ct. App. March 21, 2012). In ***Farmers Mutual of Tennessee***, we explained:

> Rule 9 provides that an interlocutory appeal may be taken from an order entered in the trial court that is not otherwise appealable. *See* Tenn. R. App. P. 9 (providing that "an appeal by permission may be taken from an interlocutory *order*" and requiring the trial court to state "the legal criteria making the *order* appealable") (emphasis added). Further, this Court is only authorized to correct errors made by the trial court. *See* Tenn. R. Ct. App. 6(a)(1)-(3) (requiring statements in appellate briefs of the "alleged *erroneous* action of the trial court," "how such alleged *error* was seasonably called to the attention of the trial court," and how the "appellant was prejudiced by such alleged *error*") (emphasis added); *see also* ***Alsip v. Johnson City Med. Ctr.***, No. E2004-00831-COA-R9-CV, 2005 WL 1536192, at *7 (Tenn. Ct. App. June 30, 2005) (describing this Court as "an error-correcting intermediate appellate court"). In addition, the only errors that may be corrected on interlocutory appeal are errors concerning the specific issue or issues certified on appeal. *See* ***Tennessee Dep't of Mental Health and Mental Retardation v. Hughes,*** 531 S.W.2d 299, 300 (Tenn.1975) (noting that "[w]hen dealing with an interlocutory appeal, the Court can and will deal only with those matters clearly embraced within the question certified to it").

*Farmers Mut. of Tennessee*, 2012 WL 982998, at *4.   In this case, the trial court made no decision concerning issues two and three.   Therefore, there is no order for us to review. "Without a determination and entry of an order reflecting that determination, this Court has nothing to review and no error to correct [*vis-à-vis* issues one and two]." ***Farmers Mutual of Tennessee***, 2012 WL 982998, at *5.   Because any opinion rendered by this Court would be advisory at this point, issues two and three are not within our purview, and we decline to address them here.   Because the three issues certified by this Court are presently outside the scope of appellate review, we vacate our order of February 1, 2016 granting leave to file an interlocutory appeal, dismiss the appeal, and remand the case to the trial court.

## IV. Conclusion

For the foregoing reasons, this Court's grant of an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure is vacated, and this matter is remanded to the trial court for further proceedings.   The appeal is dismissed with costs of the appeal assessed to the Appellant, Nancy J. Strong, and her surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE

- 7 -