IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 12, 2020 Session

# IN RE ANOUCK C.

**Appeal from the Juvenile Court for Rutherford County**
**No. TC3756        Darrell Scarlett, Judge**
_____

### No. M2019-01588-COA-R3-JV
_____

This case arises from an investigatory order issued by the Juvenile Court for Rutherford County allowing DCS to investigate abuse allegations regarding a minor child pursuant to Tenn. Code Ann. section 37-1-406. The order also prohibited the mother of the child from interfering with the investigation. The mother appeals. Because the issues raised by mother are moot, we dismiss the appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY, and THOMAS R. FRIERSON, II, JJ., joined.

Connie Reguli, Brentwood, Tennessee, for the appellant, Victoria C.

Herbert H. Slatery III, Attorney General and Reporter, Andrée Sophia Blumstein, Solicitor General, Kathryn A. Baker, Senior Assistant Attorney General, and Lexie A. Ward, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

## OPINION

### Background

The genesis of this case was a referral to the Tennessee Department of Children's Services ("DCS") regarding Anouck C. ("the Child")[1] on June 7, 2019. It was alleged that the Child had been sexually abused by her father, John C. ("Father"). At the time of the

_____

[1] To protect the identity of the minor Child, we initialize the names of parties in this matter. Additionally, we note that the Child's name is spelled differently throughout the record. In their briefs, however, both parties use the spelling used above. We defer to this spelling for purposes of this opinion.

referral, the Child was living in Williamson County with her mother, Victoria C. ("Mother"). Father, however, was living in Rutherford County, and the abuse was alleged to have occurred there. On June 10, 2019, DCS spoke with Mother about the referral and bringing the Child to DCS for an interview. The Child was brought to the office on June 11, 2019 by counsel for Mother, Ms. Reguli; however, the interview did not occur because Ms. Reguli refused to allow the Child to be interviewed once DCS informed Ms. Reguli that she would have to observe the interview from behind a two-way mirror. Ms. Reguli also told DCS on that day that she would be choosing the forensic interviewer, while DCS maintained that the Child had to be interviewed at the Child Advocacy Center ("CAC"). Based on the disagreement between DCS and Ms. Reguli as to how the interview would proceed, the interview did not take place that day and the investigation faltered.

Thereafter, DCS petitioned the Rutherford County Juvenile Court ("juvenile court") for an ex parte order allowing DCS to conduct its investigation into the abuse allegations, and restraining Mother and Ms. Reguli from interfering in the investigation. The petition alleged that the juvenile court had jurisdiction over the action pursuant to Tenn. Code Ann. sections 37-5-512(b), 37-1-103, and 37-1-406. The crux of DCS's petition was that DCS believed the Child was dependent and neglected based upon the abuse allegations and that Mother and Ms. Reguli were preventing DCS from completing its statutorily mandated investigation. *See* Tenn. Code Ann. § 37-1-406.[2] The petition asked the juvenile court to order Mother and Ms. Reguli to produce the Child for an interview to be conducted outside

---

[2] This section provides, in pertinent part, as follows:

> The investigation shall include a visit to the child's home, an interview with and the physical observation of the child, an interview with and the physical observation of any other children in the child's home, and an interview with the parent or parents or other custodian of the child and any other persons in the child's home. If the investigator deems it necessary, the investigation shall also include medical, psychological or psychiatric examinations of the child and any other children in the child's home or under the care of any person alleged to have permitted or caused abuse, neglect or sexual abuse to the child. If the investigator determines, based on a visit to the child's home, observation of and interview with the subject child, and interview with other persons in the child's home, that the report of harm was wholly without substance, the investigator may determine that physical and psychological examinations of the subject child are unnecessary, in which case they will not be required. If admission to the home, school, or any place where the child may be, or permission of the parents or persons responsible for the child's care for the physical and psychological or psychiatric examinations cannot be obtained, the juvenile court, upon cause shown, shall order the parents or person responsible for the care of the child or the person in charge of any place where the child may be, to allow entrance for the interview, examination, and investigation. If the report of harm indicates that the abuse, neglect or sexual abuse occurred in a place other than the child's home, then, in the discretion of the investigator, the investigation may include a visit to the location where the incident occurred or a personal interview with the child and the parents or other custodians in another location instead of a visit to the child's home.

Tenn. Code Ann. § 37-1-406(e).

the presence of third parties, with a DCS approved interviewer at the CAC. The juvenile court entered an order granting the petition on June 12, 2019, directing Mother to allow DCS to conduct its investigation and interview the Child outside the presence of third parties. The order further provided that if Mother and Ms. Reguli would not comply, DCS could take the Child into its temporary custody in order to complete its investigation.

On June 14, 2019, Mother filed a pleading titled "Limited Appearance Objecting to Jurisdiction and for Emergency Motion to Continue Hearing." Mother essentially argued that the juvenile court's order was void for lack of jurisdiction because the Child and Mother were living in Williamson County, not Rutherford County, at the time the petition was filed. Mother also asserted that the order was "unconstitutional in that it interferes with the Mother's fundamental right to parent and authorizes the search and seizure of the minor child without due process and without a showing of immediate risk of harm."

The juvenile court judge who signed the June 12, 2019 order, Judge Davenport, recused herself from the case on June 21, 2019. The magistrates were also recused, and the order was dated *nunc pro tunc* to June 14, 2019.[3] Our Supreme Court appointed Judge Scarlett to hear the case on June 26, 2019. On July 8, 2019, Ms. Reguli again filed a pleading titled "Limited Appearance Objecting to Jurisdiction and Dismissal of Action." This pleading raised largely the same issues as the one filed on June 14, 2019, the thrust being that the juvenile court's order was invalid and violated Mother's constitutional right to parent the Child. In particular, Mother asserted that the juvenile court's reliance on Tenn. Code Ann. section 37-5-512 and section 37-1-406(e) led to an unconstitutional expansion of those statutes because the statutes do not explicitly allow for some of the relief provided in the June 12, 2019 order.[4] Mother filed yet another "Limited Appearance Objecting to Jurisdiction and Dismissal of Action" on August 12, 2019, again raising essentially the same arguments but further asserting that Tenn. Code Ann. section 37-5-512 and 37-1-406 are both unconstitutional as written and as applied.

All motions were eventually set for hearing on August 30, 2019, and the juvenile court entered a final order on September 3, 2019. Relying only on Tenn. Code Ann. section 37-1-406,[5] the juvenile court found that it had jurisdiction over the parties and that the statute is constitutional both as written and as applied. The juvenile court ordered that DCS was allowed to conduct its investigation and interview the Child outside the presence of

---

[3] Although it is not contained in the record, there is reference in the record to a "standing order" providing that Judge Davenport is not to preside over Ms. Reguli's cases.

[4] Specifically, Mother took issue with the juvenile court's ruling that DCS could choose the provider who would interview the Child, that the Child could be placed in temporary DCS custody if Mother and Ms. Reguli would not cooperate, and that DCS could seek the assistance of law enforcement if Mother and Ms. Reguli did not cooperate with the investigation.

[5] The juvenile court's order explains that at the August 30, 2019 hearing, DCS withdrew its reliance on section 37-5-512 and proceeded only under the theory that section 37-1-406 was a proper basis for the juvenile court's ex parte order.

Mother and Ms. Reguli at the CAC. Following a motion to alter or amend, the juvenile court entered an amended final order clarifying that while DCS could conduct its interview of the Child in its preferred manner, Mother was also free to have the Child examined by a mental health professional of her choosing at any point if she so wished. Mother then filed a notice of appeal to this Court.

Subsequently, DCS filed with this Court a motion to consider post-judgment facts, which was granted. The affidavit accompanying DCS's motion reflects that after the juvenile court entered its amended final order, the parties cooperated and DCS completed its interview. The abuse allegations were determined to be unsubstantiated. However, in February of 2020, DCS received another referral making the same allegations regarding the Child. Again, the parties were able to cooperate sufficiently for DCS to complete its investigation, and the allegations were substantiated and a criminal investigation opened. DCS closed its file on the Child on March 26, 2020.

## Issues

Mother's issues are taken verbatim from her appellate brief:

>1. This Case is not Moot.
>
>2. The Trial Court Lacked Jurisdiction. Therefore, the Ex Parte and Trial Court Order are Void ab Initio for Lack of Subject Matter Jurisdiction.
>
>3. The Statutes Relied on by the State are Unconstitutional as Written and as Applied.

DCS raises the following issues, also taken verbatim from its brief:

>1. Whether this appeal has been rendered moot by events that have occurred since the juvenile court entered its final order.
>
>2. If the appeal is not moot, whether the juvenile court properly exercised jurisdiction to issue an investigatory order under Tenn. Code Ann. § 37-1-406(e).
>
>3. If the appeal is not moot, whether Mother has waived her constitutional challenge to Tenn. Code Ann. § 37-1-406(e).

## Discussion

Raising important threshold issues, DCS argues that: (1) Mother's appeal is moot because DCS's investigation into the abuse allegations has been completed, and (2) Mother's constitutional challenge is waived for a lack of compliance with Tenn. R. App. P. 27. We conclude that the dispositive issue is whether Mother's appeal is moot. A determination of whether a case is moot is a question of law that we review de novo, affording no presumption of correctness to the trial court's legal conclusions. *Alliance for Native Am. Indian Rights in Tenn., Inc. v. Nicely*, 182 S.W.3d 333, 338–39 (Tenn. Ct. App. 2005) (*perm. app. denied*, Tenn. Oct. 17, 2005).

This Court has long recognized, "since the earliest days of statehood, . . . self-imposed rules to promote judicial restraint and to provide criteria for determining whether courts should hear and decide a particular case." *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 202 (Tenn. 2009). Because "the province of a court is to decide, not advise, and to settle rights, not to give abstract opinions[,]" our role is limited to deciding "legal controversies." *Id.* at 203 (quoting *State v. Wilson*, 70 Tenn. 204, 210 (1879); *White v. Kelton*, 144 Tenn. 327, 335, 232 S.W. 668, 670 (1921)). A "legal controversy" exists when "the disputed issue is real and existing," rather than "theoretical or abstract[.]" *Id.* (internal citations omitted).

In furtherance of this well-settled principle, this Court adheres to several justiciability doctrines in determining whether a case presents a legal controversy. *Id.* "These doctrines include: (1) the prohibition against advisory opinions, (2) standing, (3) ripeness, (4) mootness, (5) the political question doctrine, and (6) exhaustion of administrative remedies." *Id.* (footnotes omitted).

The justiciability doctrine implicated here is mootness. As our Supreme Court has previously explained:

> A case must remain justiciable (remain a legal controversy) from the time it is filed until the moment of final appellate disposition. *State v. Ely*, 48 S.W.3d 710, 716 n. 3 (Tenn. 2001); [*Nicely*], 182 S.W.3d at 338; 1 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law* § 2.13(c)(ii), at 261 (4th ed. 2007) (hereinafter *"Treatise on Constitutional Law"*). While the doctrines of standing and ripeness focus on the suit's birth, the doctrine of mootness focuses attention on the suit's death. 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper *Federal Practice and Procedure* § 3533.1, at 735–37. A moot case is one that has lost its justiciability either by court decision, acts of the parties, or some other reason occurring after commencement of the case. *West v. Vought Aircraft Indus., Inc.*, 256 S.W.3d at 625; *McCanless v. Klein*, 182 Tenn. at 637, 188 S.W.2d at 747; *McIntyre v. Traughber*, 884 S.W.2d at 137. A case will be considered moot if it no

longer serves as a means to provide some sort of judicial relief to the prevailing party. *Knott v. Stewart County*, 185 Tenn. at 626, 207 S.W.2d at 338–39; *Bell v. Todd*, 206 S.W.3d 86, 96 (Tenn. Ct. App. 2005); *Massengill v. Massengill*, 36 Tenn. App. 385, 388–89, 255 S.W.2d 1018, 1019 (1952).

*Id.* at 203–04.

This Court does not consider the issue of mootness mechanically; rather, we "consider many factors, including the reason the case is alleged to be moot, the stage of the proceeding, the importance of the issue to the public, and the probability that the issue will recur." *Id.* at 204. Tennessee Courts have also recognized various exceptions to the mootness doctrine, including:

> when the issue is of great public importance or affects the administration of justice, (2) when the challenged conduct is capable of repetition and of such short duration that it will evade judicial review, (3) when the primary subject of the dispute has become moot but collateral consequences to one of the parties remain, and (4) when the defendant voluntarily stops engaging in the challenged conduct.

> *Id.*

Nonetheless, the mootness doctrine is "not easily overcome," and the potential exceptions are "applicable in the court's discretion." *Ruzzene v. Stewart*, No. E2019-00291-COA-R3-CV, 2020 WL 4556828, at *1 (Tenn. Ct. App. Aug. 6, 2020) (citing *Pub. Emps. for Envtl. Responsibility v. Tenn. Water Quality Control Bd.*, No. M2008-01567-COA-R3-CV, 2009 WL 1635087, at *11 (Tenn. Ct. App. June 10, 2009); *Hooker v. Haslam*, 437 S.W.3d 409, 417–18 (Tenn. 2014)).

Returning to the present case, DCS argues on appeal that Mother's case is moot because the primary relief sought by Mother, the voiding of the juvenile court's order allowing DCS's investigation to proceed, cannot be provided at this juncture. Specifically, DCS avers that its investigation regarding the Child has been completed not once but twice, with the cooperation of the parties. In response, Mother asserts that the first and second exceptions to mootness apply. However, we agree with DCS that this case is moot and that none of the potential exceptions apply here.

Mother does not dispute that after the August 30, 2019 hearing, the parties were able to proceed with the investigation cooperatively and that DCS completed the investigation without further issue. Moreover, when a second referral regarding the Child was made to DCS, the parties were once again able to cooperate such that DCS could sufficiently complete its investigation, and the allegations of abuse were substantiated. While the primary relief sought by Mother in this appeal is a ruling that the juvenile court's order

allowing DCS to investigate is void, it is well-settled that "an action brought to enjoin a particular act becomes moot once the act sought to be enjoined takes place." *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994) (citing *Badgett v. Broome*, 219 Tenn. 264, 268, 409 S.W.2d 354, 356 (1966)); *see also Fisher v. Rutherford Cnty. Reg'l Planning Comm'n*, No. M2012-01397-COA-R3-CV, 2013 WL 2382300, at *2 (Tenn. Ct. App. May 29, 2013) (suit to enjoin construction of mosque rendered moot after mosque was built and operating); *Nicely*, 182 S.W.3d at 339 (action to preserve Native American burial grounds underneath construction project was moot after completion of the construction project). Similarly, we have previously held that actions brought to enjoin a particular act are moot once the parties reach an agreement and the act occurs. *See Shealy v. Policy Studies, Inc.*, No. E2005-01124-COA-R3-CV, 2006 WL 2482984, at *12–13 (Tenn. Ct. App. Aug. 29, 2006) (constitutional challenge to child support order and statute was moot after the parties entered into agreed order providing for increased child support); *Rodgers v. Rodgers*, No. M2004-02046-COA-R3-CV, 2006 WL 1358394, at *5 (Tenn. Ct. App. May 17, 2006) (challenge to child support statute was moot after parties settled the dispute).

Even if we were to conclude that the juvenile court committed a reversible error, "it is unclear what meaningful relief lies within the power of this court to give[,]" because the investigation Mother sought to enjoin has long been completed. *Dalili v. Dalili*, No. E2019-00371-COA-R3-CV, 2020 WL 628526, at *2 (Tenn. Ct. App. Feb. 10, 2020) (quoting *In re A.G.*, No. M2007-0799-COA-R3-JV, 2009 WL 3103843, at *5 (Tenn. Ct. App. Sept. 28, 2009)). Consequently, we agree with DCS that Mother's request to void the juvenile court's investigatory order is moot.

Further, we are unpersuaded by Mother's assertion that the "great public importance" and "capable of repetition yet evading review" exceptions to mootness apply here.[6] For a matter to be of great public importance, the case must present "exceptional circumstances where the public interest clearly appears." *Norma Faye Pyles*, 301 S.W.3d at 210 (quoting *Dockery v. Dockery*, 559 S.W.2d 952, 955 (Tenn. Ct. App. 1977)). In making this determination, we bear in mind the following:

> (1) the public interest exception should not be invoked in cases affecting only private rights and claims personal to the parties; (2) the public interest exception should be invoked only with regard to "issues of great importance to the public and the administration of justice"; (3) the public interest exception should not be invoked if the issue is unlikely to arise in the future; and (4) the public interest exception should not be invoked if the record is inadequate or if the issue has not been effectively addressed in the earlier proceedings.

---

[6] We also conclude that none of the additional mootness exceptions apply in this case.

*Id.* at 210–11 (footnotes omitted).

Considering the foregoing, we conclude that Mother has not shown that the issues in this case are of great public importance; rather, they affect only the private rights and claims of Mother. Although Mother asserts in her brief that "[t]hese issues are of great public importance and infringe upon basic rights of privacy guaranteed by the Constitution, i.e., privacy rights and family integrity rights[,]" her analysis of this exception ends there, and she cites no Tennessee case law buttressing her position.[7] Mother does not explain in her brief how the original controversy between the parties is likely to reoccur in light of the undisputed fact that Mother and DCS appear to have fully resolved their differences over the abuse investigation. In light of Mother's failure to develop her argument as to this exception, *see* Tenn. R. App. P. 27, and our own conclusion that this case does not present exceptional circumstances where the public interest clearly appears, we decline to reach the merits of this case based on the public interest exception to mootness.

Neither does the "capable of repetition yet evading review" exception save Mother's case, as this doctrine also applies only under exceptional circumstances. *Nicely*, 182 S.W.3d at 339–40. The party invoking this exception must demonstrate: (1) a reasonable expectation that the official acts that provoked the litigation will occur again, (2) a risk that effective judicial remedies cannot be provided in the event that the official acts reoccur, and (3) that the same complaining party will be prejudiced by the official act when it reoccurs. *Id.* at 340 (footnotes omitted). A "theoretical possibility that an act might reoccur" is insufficient to trigger the "capable of repetition yet evading review exception." *Id.* Instead, the invoking party must show "a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1184, 71 L.Ed.2d 353 (1982)).

None of the foregoing requirements have been demonstrated here. Mother has failed to explain how there is a reasonable expectation or demonstrated probability that the parties will confront the same controversy. Likewise, Mother does not extrapolate on a

---

[7] DCS also urges that Mother has failed to comply with the rules of appellate procedure in her principle brief. *See* Tenn. R. App. P. 27(a)(7) (providing that an appellant's brief shall contain an argument section with citations to the authorities relied on and appropriate references to the record); *Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010) ("[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."). We agree that Mother's arguments are underdeveloped and difficult to discern. With regard to why the mootness doctrine should not apply in this case, Mother cites no Tennessee case law supporting her position, and her brief also fails to cite to the record in many places. It is not the role of this Court "to research or construct a litigant's arguments for him or her[,]" and we remind litigants that "judges are not like pigs, hunting for truffles buried in briefs." *Sneed*, 301 S.W.3d at 615; *Coleman v. Coleman*, No. W2011-00585-COA-R3-CV, 2015 WL 479830, at *9 (Tenn. Ct. App. Feb. 4, 2015) (quoting *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). In light of our decision that this appeal is moot, however, we decline DCS's invitation to conclude that Mother's arguments are waived.

lack of effective judicial remedies or how she would be prejudiced if the same events did reoccur. Mother's position is further undercut by the undisputed fact that the parties were able to cooperate in order for DCS to complete its investigation, and subsequently conduct *another* investigation regarding the Child without issue. The undisputed post-judgment facts presented by DCS reflect that there is little if any probability this controversy will reoccur. Accordingly, the "capable of repetition yet evading review" exception does not compel us to reach the merits of Mother's case.

The only remaining issue is Mother's constitutional challenge to section 37-1-406.[8] This issue is also moot. Because we have already concluded that there is no longer a justiciable case or controversy between the parties, a decision on the constitutionality of section 37-1-406 would be nothing more than an advisory opinion. "Tennessee's courts do not render advisory opinions." *Rodgers*, 2006 WL 1358394, at *5 (citing *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 192 (Tenn. 2000)). Mother's counsel conceded at oral argument that she has been waiting for an appropriate case to challenge section 37-1-406, but "a party's desire for an opinion to be used in future cases is not, by itself, sufficient to render a case justiciable." *Id.* Rather, it is well-settled that "[i]mportant constitutional issues . . . should be left for determination in a case that presents an actual, ongoing controversy." *Nicely*, 182 S.W.3d at 341; *see also Norma Faye Pyles*, 301 S.W.3d at 210 ("Our judicial heritage speaks to restraint in addressing issues when the parties do not have a continuing, real, live, and substantial interest in the outcome."); *Rodgers*, 2006 WL 2482984, at *5 ("Especially with regard to constitutional issues, the courts will refrain from deciding cases in the absence of an actual controversy requiring them to address the issue."). We do not deviate from that principle today. Consequently, we conclude that Mother's constitutional challenge to section 37-1-406 is moot and need not be reached.

### Conclusion

Based on the foregoing, this appeal is dismissed as moot and nonjusticiable. Pursuant to applicable law, this case is remanded for collection of costs assessed below. Costs of this appeal are taxed to the appellant, Victoria C., for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE

---

[8] Mother also asserts in her brief that Tenn. Code Ann. section 37-5-512 is unconstitutional as written and as applied. However, the juvenile court did not consider or rule on section 37-5-512 in the order from which Mother appeals. We therefore decline to address this issue, as appellate courts are "limited in authority to the adjudication of issues that are presented and decided in trial courts." *Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976)).