IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 5, 2002 Session

## RAY WRIGHT v. BRITTANY PATE

**A Direct Appeal from the Juvenile Court for Dickson County**
**No. 11-01-135-M     The Honorable A. Andrew Jackson, Judge**

_____

**No. M2002-00910-COA-R3-JV - Filed December 11, 2002**

_____

This case arises from comments made by the Juvenile Court Judge, Dickson County, during a hearing on Appellee's Petition for Paternity and Visitation. In short, the Judge made statements to the effect that he was opposed to setting visitation in these matters and that, if called upon to do so, he would make the schedule so difficult that the parties could not adhere to it and would then hold them in contempt for failure to comply. Neither party moved for recusal of the judge nor objected to his comments. Appellant appeals and asks this court to order recusal of the Juvenile Court Judge. Because no motion for recusal was filed and because the judge's comments were general and not directed specifically to these parties, we affirm the Order of the lower court and remand for such further proceedings as necessary.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Affirmed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

John P. Cauley, Franklin, For Appellant, Brittany Pate

Henry F. Todd, Jr., Dickson, For Appellee, Ray Wright

### OPINION

R.R.W. was born on June 15, 2001. On November 2, 2001, Ray Wright ("Appellee," "Plaintiff," or "Mr. Wright"), seeking to establish his paternity and rights concerning R.R.W., filed a Petition for Paternity and Visitation and a Motion for Temporary Visitation in the Juvenile Court of Dickson County. On December 5, 2001, Brittany Pate ("Appellant," "Defendant," or "Ms. Pate"), the natural mother of R.R.W., filed an Answer to Mr. Wright's Motion and a Counter-Claim. In her Answer, Ms. Pate admitted that Mr. Wright was the natural father of R.R.W. and that Mr.

Wright's paternity was established at birth.[1]   In her Counter-Claim, Ms. Pate asserted that Mr. Wright should not be granted visitation because he "lacks the maturity and judgment necessary to safely care for [R.R.W.]."  A hearing on the matter of temporary visitation was held on January 16, 2002.  At that time, Judge Andrew Jackson set visitation for Mr. Wright, such visitation being seven hours every weekend, alternating between Saturdays and Sundays, with temporary support of $52.00 per week to be paid to Ms. Pate.[2]  An Order reflecting this arrangement was entered on January 30, 2002.  Also on January 30, 2002, the court held a hearing to determine permanent visitation and support for R.R.W.  At the beginning of that hearing, Judge Jackson made the following statement:

> Before we get started on this, I want everybody to understand I don't set visitation.  If I do, I specifically make it so absolutely ridiculous that nobody can adhere to it.  And I hold people in contempt and put them in jail for it.
>
> I've been doing this for 22 years and I've set visitations five times.  All five times both parents have ended up in jail for contempt.  If I'm forced to set it, I will set it.  But it will be so absolutely ridiculous that nobody can adhere to it and people will go to jail.  That's a promise.
>
> So, if you all would like to get together to try to settle this visitation issue, it might be advantageous.

Neither party raised an objection to Judge Jackson's comments and the hearing proceeded. Following the hearing, Judge Jackson entered an Order on February 13, 2002, which reads in pertinent part as follows:

> Upon the hearing of the witnesses and the parties, it appears to this Court that it is undisputed that the minor child, [R.R.W.], born June 15, 2001, is the natural son of the Petitioner, Ray Wright;
>
> It also appears to this Court from review of the income of the Petitioner for the two years preceding the hearing that his payment of $52.00 a week as set in the temporary Parenting Plan exceeds the guidelines and that said amount is appropriate;
>
> *                              *                              *

---

[1] Mr. Wright is listed as the father on R.R.W.'s birth certificate.

[2] There is no transcript of this January 16, 2002 hearing. However, the January 30, 2002 Order reflects the court's granting of temporary visitation and support.

It appears that the Respondent, Brittany Pate, should remain custodian of the minor child with the visitation of the Petitioner, Ray Wright, to remain pursuant to the previous temporary visitation, to wit, the Petitioner should have visitation with the minor child on each weekend for a period of seven hours with the day to be alternated between Saturday and Sunday and said visitation to be with the Petitioner without the presence of the Respondent and the Petitioner may take the child from the residence;

It also appears that this visitation should remain the same until June 19, 2002 at which time the Court will review this matter as the child will be one year of age and will increase visitation at that time unless agreed upon previously by the parties;

Notice of appeal was filed on March 12, 2002. On June 6, 2002, Ms. Pate filed a Motion to Stay with this Court, pending the outcome of this appeal. Mr. Wright filed a Response to Motion for Stay on June 10, 2002 and this Court entered an Order granting Ms. Pate's Motion on June 11, 2002. In pertinent part, the Order reads as follows:

The mother has now moved this court to stay the proceedings in the trial court based, in part, on the trial court's "promise" to set a visitation schedule "so absolutely ridiculous that nobody can adhere to it and people will go to jail." The appellee has filed a response in opposition to the stay. The court finds good cause to stay the proceedings in the trial court pending appeal.

Ms. Pate raises one issue for review as stated in her brief: At the outset of the hearing in this matter the trial court (1) promised imprisonment should he be called upon to establish a visitation schedule and (2) promised that should he be required to establish such a schedule it would be so ridiculous that it could not be adhered to. At the close of the hearing the trial court, rather than establish a permanent visitation schedule simply reminded the parties of his promise of imprisonment, continued the temporary visitation schedule and reset the case for hearing, following the child's first birthday. Does justice require the disqualification of the trial court judge in this case?

We note at the outset that Appellant's sole issue on appeal addresses only the comments made by Judge Jackson during the January 30, 2002 hearing and does not touch the merits of Judge Jackson's February 13, 2002 Order. As stated in her brief, the Appellant would have this Court "disqualify the juvenile court judge and remand this case so that it might be heard by a fair and impartial judge." This Court has held that motions to recuse "must be filed promptly after the facts forming the basis for the motion become known ... and the failure to seek recusal in a timely manner results in a waiver of a party's right to question a judge's impartiality." ***Davis v. State Dept. of***

*Employment Sec.*, 23 S.W.3d 304, 313 (Tenn. Ct. App.1999) (citations omitted). Because Appellant has filed no motion for recusal, we must hold that Appellant has waived such right in conjunction with the January 30, 2002 hearing and subsequent Order filed February 13, 2002. However, we note that Appellant is not estopped from filing a motion for recusal should this case proceed further in Judge Jackson's court.

There is some indication in the Appellant's brief that, regardless of the fact that no motion to recuse was filed, Judge Jackson should have recused himself *sua sponte* because of his unwillingness to set visitation in this type of case. We note that all litigants are entitled to the "cold neutrality of an impartial court" and have a right to have their cases heard by fair and impartial judges. *Kinard v. Kinard*, 986 S.W.2d 220, 227 (Tenn. Ct. App.1998)(quoting *Leighton v. Henderson*, 414 S.W.2d 419, 421 (1967); *Chumbley v. People's Bank & Trust Co.*, 57 S.W.2d 787, 788 (Tenn. 1933)). To that end, a judge should recuse himself or herself if there is any doubt regarding the judge's ability to preside impartially or if the judge's impartiality can reasonably be questioned. *See State v. Hines*, 919 S.W.2d 573, 578 (Tenn.1995). Under Canon 3 of the Code of Judicial Conduct, a judge is required to recuse himself or herself when "the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding." Tenn.R.Sup.Ct. 10, Canon 3(E)(1)(a).

In the case at bar, Ms. Pate does not complain that Judge Jackson had a personal bias or prejudice toward her or her attorney. Rather, she contends that the trial judge's general comments concerning his usual course of action in setting visitation schedules gives the appearance of bias or partiality with respect to the subject matter of this case. As explained below, however, this type of bias or prejudice does not trigger a judge's duty to recuse:

> Bias and prejudice are only improper when they are personal. A feeling of ill will or, conversely, favoritism toward one of the parties to a suit are what constitute disqualifying bias or prejudice. For example, where a judge stated that he "could not stand" a certain law enforcement officer and would not accept cases initiated by him, it was found that his personal feelings and intense dislike of the officer were improper. However, neither bias nor prejudice refer to the attitude that a judge may hold about the subject matter of a lawsuit. That a judge has a general opinion about a legal or social matter that relates to the case before him or her does not disqualify the judge from presiding over the case. Despite earlier fictions to the contrary, it is now understood that judges are not without opinions when they hear and decide cases. Judges do have values, which cannot be magically shed when they take the bench. The fact that a judge may have publicly expressed views about a particular matter prior to its arising in court should not automatically amount to the sort of bias or prejudice that requires recusal.

*Caudill v. Foley*, 21 S.W.3d 203, 215 (Tenn. Ct. App. 1999) (citing Jeffrey M. Shaman et al., *Judicial Conduct and Ethics* § 4.04, at 101-02 (2d ed.1995)(footnotes omitted)).

While we note that Judge Jackson's comments, when read from the record, do seem a bit brusque, not every comment by a judge that can be deemed improper requires recusal. During the course of a trial, a judge must be patient, dignified, and courteous to lawyer and witnesses while, at the same time, ensuring that the matter is adjudicated promptly and efficiently.[3] The manner in which a judge chooses to balances these requirements is largely left to the judge's own discretion. Although in this case Judge Jackson was never asked to recuse himself, the question of whether he should recuse himself is a matter within his discretion. *Wiseman v. Spaulding*, 573 S.W.2d 490 (Tenn. Ct. App.1978). Unless the grounds for recusal fall within those enumerated in Tenn. Const. art. 6, § 11 or T.C.A. § 17-2-101 (1994), the Trial Judge's refusal to recuse is reviewed as an abuse of discretion. *State v. Raspberry*, 875 S.W.2d 678, 681 (Tenn. Crim. App.1993). In making a decision, a judge must be objective and ask what a reasonable, disinterested person knowing all the relevant facts would think about the judge's impartiality. *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App.1998).

We have examined the record in this case and, while we note that Judge Jackson's comments were uncalled for in the context of this case, those comments do not fall within the grounds of recusal as enumerated in Tenn. Const. Art. 6, § 11 or T.C.A. § 17-2-101 nor are the comments directed to the parties personally. Consequently, we do not find that the statements rose to such an egregious level that it was an abuse of discretion for Judge Jackson to hear the case, particularly in light of the fact that the Order entered following the hearing outlines a manageable visitation schedule for R.R.W. and not one "so absolutely ridiculous that nobody can adhere to it."

For the foregoing reasons, we affirm the Order of the trial court, entered February 13, 2002 and remand the case for such further proceedings as may be necessary. Costs of this appeal are assessed to the Appellant, Brittany Pate, and her surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.

---

[3] *See* Rule 10, Supreme Court Rules. Canon 3 (B)(4) states that "[a] judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity...." This duty, however, is balanced against the duty imposed by Canon 3 (B)(8), which is to "dispose of all judicial matters promptly, efficiently, and fairly."