IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 16, 2018

## MARIEL BENTZ RICH v. DAVID TATE RICH, JR.

**Appeal from the Circuit Court for Davidson County**
**No. 17D-715      Philip E. Smith, Judge**

---

**No. M2018-00485-COA-T10B-CV**

---

This is an accelerated interlocutory appeal from the trial court's denial of the plaintiff's recusal motion. Following a review of the record and the trial court's ruling, we apply the de novo standard of review mandated by Supreme Court Rule 10B and affirm the judgment of the trial court.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and JOHN W. MCCLARTY, J., joined.

Helen Sfikas Rogers and Eugene Frank Guerre, III, Nashville, Tennessee, for the appellant, Mariel Bentz Rich.

Marissa A. Moses, Sadie Ramsey Davis, Lisa K. Helton, and Hunter C. Branstetter, Nashville, Tennessee, for the appellee, David Tate Rich, Jr.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

The case underlying this appeal involves an amended complaint for divorce filed by Mariel Bentz Rich ("Wife") against David Tate Rich, Jr. ("Husband") in July 2017 following a five-year marriage. Husband answered the complaint and filed a counter-complaint for divorce. The parties have one child who was born in December 2014.

Husband filed a motion seeking *pendente lite* parenting time in September 2017, and the trial court held a hearing on October 6, 2017, to consider this motion. The court issued an order on October 19, 2017, specifying the days of the week and the holidays

when Husband would have time with the child. Wife filed a motion in December 2017 seeking *pendente lite* support and another motion in January 2018 to modify the scheduling order. The trial court held a hearing on February 2, 2018, to consider both of Wife's motions as well as some discovery disputes that are not relevant to this interlocutory appeal.

After addressing the discovery issues, the trial court turned to Wife's motion for *pendente lite* support. The relevant portion of the transcript relating to this motion is as follows:

MS. ROGERS:[1] We had a motion for *pendente lite* support.

THE COURT: Uh-huh.

MS. RUSS:[2] Your Honor, I think our motion to set was next.

THE COURT: It's not ready to set.

MS. RUSS: Well, could we get a revised scheduling order as well?

THE COURT: I'll revise the scheduling order.

MS. RUSS: Okay. Can we do that?

THE COURT: We'll do that last.

MS. RUSS: Oh, okay.

THE COURT: All right.

MS. ROGERS: Your Honor, this -- as you now know, this case has been pending 11 months, and what we have had happen in this case is basically the husband -- if I can hand this up to you -- moved out --

THE COURT: Do you have an income and expense statement, Ms. Russ?

MS. RUSS: Yes, I provided it to --

---

[1]Ms. Rogers represented Wife.

[2]Ms. Russ represented Husband.

MS. ROGERS: And I've got an updated one from my client, but what this exhibit that I'm handing up to you shows is that husband -- here's my client's -- husband was depositing his paycheck into the joint account, and he's basically stopped doing that now, Your Honor. He is paying very little, if anything, into the marital account. What he does is he puts in 2200 to cover his rent. And then he puts in enough to cover his Belle Meade country club. The utilities for the house are auto-drafted, and he's paying basically nothing else. I can hand up to you an example - Ms. Russ -- of the spend down or what he is now paying which is really very, very minimal. So Mr. Rich, first of all, is going to tell you on his income and expense statement he only makes 10,000 a month. But that ignores the $25,000 bonus he got in December and we don't know --

THE COURT: Let me cut right through this. What did your client make last year, report on tax returns? Do y'all have a copy of them?

MS. RUSS: These are the tax returns, Your Honor.

THE COURT: All right. Are they joint?

MS. RUSS: They are.

THE COURT: Okay.

MS. RUSS: And I actually have a breakdown. Look, this will help Your Honor here.

THE COURT: Okay. (The Court reviews document.)

MS. RUSS: Your Honor, do you have the mutual release as well as that --
(The Court reviews document.)

THE COURT: All right. Y'all have got 2016 --

MS. ROGERS: Your Honor, could I pass up just one more thing so you can - -

THE COURT: Now, let me stop you.

MS. ROGERS: Okay.

THE COURT: I'm taking over this motion. All right. He made -- he's listing 171,800 -- $171,847 in income. Taxable interest: $30,476. Ordinary dividends: $2,922, capital gain: 190,673. And rent, Royalty Partnerships -

MS. RUSS: Your Honor, that's hers.

THE COURT: -- Trust.

MS. RUSS: That's all hers.

THE COURT: 146,087. For a total of $542,005. All right. Is that 146,087 hers?

MS. ROGERS: I think it is, Your Honor. I think the capital gain is hers. They each have trusts --

THE COURT: Now, wait a minute. Let me ask the questions, and we'll get through this a lot quicker.

MS. ROGERS: No problem. But hers have --

THE COURT: I tell you what. Ma'am, stand up. You have been sworn?

THE CLERK: She has.

THE COURT: Did you receive . . . $146,087 last year?

MS. RICH: What was the line item?

THE COURT: Trust, Schedule E.

MS. RICH: My trust is a pass-through entity, and so it's reflected on our tax return. So the trust receives the money. I don't necessarily -- I didn't receive capital gains to use personally.

THE COURT: Now, I'm not talking about capital gains. I'm talking about the money -- not capital gains or loss. Not Schedule D. Schedule E.

MS. RICH: Right. I -- sorry. May I see a copy? I did not receive $146,000 to use - -

MS. RUSS: There was a lot more.

- 4 -

MS. RICH: -- from my trust.

MS. ROGERS: Your Honor, it's like --

THE COURT: You say -- well, wait a minute. Whoa. She has a trust?

MS. ROGERS: She does.

THE COURT: Does she control it?

Ms. ROGERS: No. She is not the trustee.

THE COURT: Who is the trustee?

MS. ROGERS: Her father is the trustee.

THE COURT: All right. Did she receive $146,000 last year?

Ms. ROGERS: And that's where she's hung up; the word "receive." It doesn't -- it doesn't -- it isn't paid to her. It's like a partnership where you pay -- where it passes through on your income. So --

THE COURT: So he's paying taxes on this trust?

MS. ROGERS: He is.

MS. RUSS: Correct.

THE COURT: Well, how -- what prevents that from becoming marital property?

MS. ROGERS: We're looking at that, Your Honor. We're also going to look at his.

THE COURT: Well, wait a minute. Okay. I want to understand. How much did you receive in hand last year on a monthly basis?

MS. RICH: I don't know off the top of my head. It will be reflected.

THE COURT: Give me a ballpark.

MS. RICH: In 2017?

THE COURT: 2017.

MS. RICH: I think I received $5,000 for the year.

THE COURT: For the year?

MS. RICH: Yes, sir.

THE COURT: You didn't receive a monthly income?

MS. RICH: No, sir.

THE COURT: How much is in this trust that we're talking about right now?

MS. RICH: I don't know.

MS. RUSS: Your Honor, that's why I brought Tom Price here today. I've never seen a case like this before, and there's -- if anyone has a need here for *pendente lite* support -- which no one does; let me be clear – it's my client. So I have a breakdown. I can show you --

MS. ROGERS: Can I --

THE COURT: Sit down, Ms. Russ.

MS. RUSS: Okay.

THE COURT: Ms. Rogers, how much did she receive cash in hand last year?

MS. ROGERS: She's saying 5,000, Your Honor. Now, she gets -- she gets to charge on her parents' credit card. They've been supporting this.

THE COURT: All right. I'm denying your motion for *pendente lite* support. My questions can't be answered. So get this case ready for a final hearing on the scheduling order.

MS. ROSS: Thank you, Your Honor.

MS. ROGERS: Your Honor, no support for the child? There's a child here.

MS. RUSS: He's paying for that. He's paying for his son, and he will continue to.

THE COURT: You know, if there's an issue, I'll deal with it at final hearing.

MS. RUSS: Yes.

MS. ROGERS: Okay.

MS. RUSS: Thank you.

The trial court then turned to Wife's motion to modify the scheduling order. The relevant portion of the hearing on this issue for purposes of this appeal is as follows:

THE COURT: All right. What are the issues in this case? I'm not looking for any settlement negotiation. I don't want that. What are the issues?

MS. ROGERS: It's just a short-term marriage. It's mostly the issue of he wants more parenting time and, Your Honor, gave him *pendente lite* [parenting time].

THE COURT: Okay.

MS. ROGERS: And what --

THE COURT: Is there a problem with me maximizing time at the final hearing?

MS. ROGERS: Yes. He's an alcoholic. He's got anger issues and problems. He admitted to fisting the walls, kicking gates. He's urinated in their bed, so they've had to change mattresses three times. He's that bad. He's urinated on a couch. I mean, he's a bad drunk, Your Honor.

THE COURT: Any DUIs?

MS. ROGERS: No DUIs.

THE COURT: Any days missed from work because of alcohol abuse?

MS. ROGERS: I don't know because they're separated.

THE COURT: Okay. Well, when they were married?

MS. RUSS: Your Honor, he's had successful parenting time for 11 months. They have zero proof. If Your Honor will recall, this is a case where he came in, there were hidden cameras in their house. This woman has been creating - -

THE COURT: Be ready for maximized time, Ms. Rogers, at final hearing.

MS. ROGERS: I -- Your Honor, I –

THE COURT: This is –

MS. ROGERS: You need to hear the proof.

THE COURT: This is a case that should be resolved. Somebody -- one of the litigants is being hardheaded. Now, is he requesting custody?

MS. RUSS: No, Your Honor. Not right now, no, but if he's being alienated from his son by the time we get to trial, I might.

THE COURT: Okay.

MS. ROGERS: Your Honor, she's cooperated; she has changed dates with him. She has worked with him. This fellow has got issues. You need to hear it.

THE COURT: I'm not so sure your client doesn't have issues too. She can't tell me what she made last year. Nobody can seem to tell me what's in this trust.

MS. ROGERS: But when I --

MS. RUSS: Your Honor --

THE COURT: No. You -- come in better prepared on this next time. Okay? When I ask a question, I want my questions answered.

MS. ROGERS: Okay. Your Honor, I understand that.

THE COURT: Now, let me say if it's a situation, ma'am, I get to final hearing and I think you're trying to impede his relationship, then I may make a finding of parental alienation. You don't want that finding. All right?

- 8 -

Now, let's talk about the scheduling order. We're moving on.

 . . . .

THE COURT: Ms. Rogers, how long will it be from the reports?

MS. ROGERS: Well, Your Honor, my client is just going to -- my expert is just going to review Mr. Price's report. So I'm dependent on that.

THE COURT: Okay. All right.

MS. ROGERS: I think the February 15th date we need to use to depose the parents that have the trust information because he's in the same situation as my client. When I took his deposition --

THE COURT: I think that's a good idea.

MS. ROGERS: Yeah. When I took his deposition, he didn't know what his trust had or what his income was either.

THE COURT: Well --

MS. ROGERS: So --

THE COURT: If you don't know how much money you've got, you have too much.

MS. RUSS: You have -- exactly, Your Honor. And that's --

THE COURT: Okay.

MS. RUSS: -- the problem here. It's not an alimony case. Everybody is doing fine.

THE COURT: I'm going to decide that right now. She's asking for alimony, but let me tell you --

MS. ROGERS: He is too.

THE COURT: -- she has got this trust, then nobody will be awarded any attorney's fees when I rule there's no alimony.

MS. RUSS: Agreed.

THE COURT: Okay. So, I mean, it doesn't sound like an alimony case. She's got this -- this trust that's being funded to the tune of $147,000 a year.

MS. ROSS: More. More.

THE COURT: And he's paying taxes - well, okay. I'm looking at the tax return right now, 2016. He's paying taxes on it. She may be paying taxes on his. You know, come on guys; let's get real on this.

. . . .

THE COURT: Okay. You know, I'm going to maximize time. How much time is he getting right now?

MS. RUSS: It's just Friday to Sunday and one night in the off week -- one overnight in the off week, but he would like more.

THE COURT: Now, Mr. -- Mr. Guerre knows what I'm going to give. I'm going to give it. I don't see any reason. I'll let you put your proof on, but I'm going to maximize his time. Both of y'all have trusts. I may give transitional alimony for a period of time, but I'm going to divide the marital assets. But let's don't make this more difficult than it is. All right?

. . . .

THE COURT: All right. What else do we need on the scheduling order?

MS. RUSS: A certificate of readiness has already been filed, but I know not signed.

THE COURT: It's --

MS. RUSS: And it wasn't joint.

THE COURT: Yeah. Refile another one. After -- file your motion to be heard on the first motion docket after the mediation; attach a certificate of readiness. Just -- it doesn't have to be signed by both parties; just, you know, at that point, I'll hear your motion to set. How long to try this case? I hope you say one day.

MS. RUSS: I mean, if it's an alimony case, Your Honor, it's going to be more than one day. And I -- I mean, I - -

- 10 -

THE COURT: It's going to be one day. A five-year marriage.

MS. ROGERS: Your Honor --

THE COURT: One day.

MS. ROGERS: Okay.

THE COURT: I'll give you two hours to put your proof on, Ms. Russ -- make that two and a half hours. In addition -- I will give you in addition an hour to cross-examine. Ms. Rogers, you will have two and a half hours for your proof and an hour to cross-examine. Please put that in the order.

MS. RUSS: Yes, Your Honor.

THE COURT: All right.

MS. RUSS: The supplementing of the discovery which you already ruled on, I'll add that to the scheduling order.

MS. ROGERS: We'll do 60 days in advance, 45 days.

THE COURT: Well, I think -- and I think probably we'll have to do it a lot quicker than that. I think probably --

MS. RUSS: Before the expert?

THE COURT: Yeah. I'm thinking by -- no later than the hearing of the motion to set because I plan on giving y'all a quick court date. We may come in on a Saturday to hear this. There's -- this is -- there's nothing here, guys; come on. This is a cut-and-dry case.

Wife filed a motion to recuse on February 23, 2018, arguing that the court (1) improperly prejudged issues during the hearing on February 2 that should not be determined until the final hearing of the case and (2) substantially limited Wife's ability to present proof on the merits of the case at the final hearing, which unduly restricts Wife's due process rights to a fair trial and her constitutionally protected right to open courts in Tennessee.

<u>Trial Court's Ruling</u>

The trial court denied Wife's motion to recuse by order dated March 13, 2018. The court wrote, in relevant part:

- 11 -

. . . A careful review of the February 2, 2018 hearing transcript (the "Transcript") demonstrates that the Court has shown no bias or prejudice against [Wife], as [the] Court's rulings apply to both parties, the Court has reserved ruling on the issues until a final hearing, and the Court has not violated [Wife's] right to open access to the court.

. . . .

In determining whether the Court must grant or deny [Wife's] motion to recuse, the Court must first determine subjectively whether it can be impartial. The Court finds, without reservation, that it can. This Court harbors no ill-will, prejudice or pre-conceived thoughts or feelings towards either party. Additionally, the Court has no knowledge concerning the case before it or the litigants other than that knowledge gained during the course of these proceedings. The Court has no reservations concerning its ability to preside impartially over the case before it.

Having determined subjectively that the Court can preside impartially, the Court must examine [Wife's] allegations within the context of the proceedings to determine whether a person of ordinary prudence in the Court's position, with full knowledge of the facts known to the Court, would find a reasonable basis to question the Court's impartiality.

. . . .

*Parenting Time*

During the course of the February 2, 2018 hearing, the Court asked whether [Wife] would have a problem with maximizing [Husband's] parenting time at the final hearing. [Wife's] counsel indicated [Husband] is "an alcoholic" and has "anger issues." [Husband's] counsel stated [Husband] had enjoyed 11 months of successful parenting time during the pendency of the parties' divorce and that, while he was not seeking custody of the child, in the event [Wife] attempted to alienate [Husband] from the child, he would argue that issue at trial. The Court heard brief comments from counsel for both parties and, while stating that [Wife] should "be ready for maximized time" as the law requires, and acknowledging that both parties "have issues" with their respective cases, the Court made no ruling regarding parenting time. At a later point in the proceeding, the Court again stated that, following the parties' proof, it would "maximize" [Husband's] parenting time — which, pursuant to Tenn. Code Ann. § 36-6-106(a), necessarily depends on the facts and circumstances of the case and cannot be determined until the parties have presented their proof. Rather

than pre-determining the issue of parenting time, the Court reiterated the law's requirements and made it clear to both parties that proof would be necessary regarding all issues they are raising.

*Alimony and Attorney's Fees*

At one point during the February 2, 2018 hearing, [Husband's] counsel stated, "this is not an alimony case." At other points, counsel for both parties acknowledged that each party was, in fact, seeking alimony. During arguments regarding [Wife's] motion for *pendente lite* support, information provided regarding [Wife's] trust account and the amount of income she draws from that account was incomplete and inconclusive. In denying [Wife's] motion, the Court specifically stated, ". . . [m]y questions can't be answered. So get this case ready for a final hearing on the scheduling order." During the hearing of the parties' competing motions to compel discovery, both parties revealed that they benefit from trusts, about which they have limited knowledge or information. Additionally, [Wife] testified that she has a nursing degree and the ability to generate income as a nurse. [Husband] testified that he works as a healthcare consultant and to the amount of his income in 2017.

The Court ruled on several motions offered by both parties related to the discovery of trust-related documents and other financial information. Further, the Court modified its prior scheduling order to permit the parties time to depose the parties' parents regarding their respective trusts, to depose the parties' respective financial experts, and to provide for additional discovery deadlines related to the disclosure of certain financial account information. The Court's rulings were for the explicit purpose of allowing the parties to obtain information related to their relative financial status. Such information goes directly to the issue of alimony and attorney's fees. Had the Court pre-determined this issue, its discovery rulings and the modified scheduling order would be unnecessary.

. . . .

[Wife] alleges that the Court's decision to schedule the trial of this matter for one day of the Court's calendar, with equal time allotted to each party for direct proof and for cross-examination, amounts to a violation of [Wife's] constitutional rights to open courts and to a "full and fair proceeding."

The Tennessee Rules of Evidence provide that the court "shall exercise appropriate control over the presentation of evidence and conduct

of the trial when necessary to avoid abuse by counsel." Tenn. R. Evid. 611(a). Further, Tennessee trial courts "possess inherent, common law authority to control their dockets and the proceedings in their courts. Their authority is quite broad. . . ." *Hodges v. Attorney General*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000). [Wife] has asserted that *Hodges* requires such control to be used "sparingly." This, however, is an incomplete reading of *Hodges*. *Hodges* specifically concerns a trial court's *sua sponte* dismissal of a pro se litigant's complaint for failure to prosecute. The opinion states: "Trial courts may, on their own motion, dismiss cases for lack of prosecution, but this authority should be exercised sparingly and with great care." *Id*. (citing *Harris v. Baptist Memorial Hospital*, 574 S.W.2d 730, 731 (Tenn. 1978)).

This Court, admittedly, unapologetically and aggressively manages its docket and the proceedings before it. Nowhere is it suggested — in *Hodges* or in any other Tennessee opinion or rule of evidence or procedure — that trial courts should exercise such control "sparingly." To relinquish control of proceedings to litigants and their attorneys (in the course of lawsuits that are often emotionally charged, time consuming and financially draining) ultimately would result in the limited access to the courts of which [Wife] complains.

In the present case, the Court — reminding the parties of the short duration of their marriage and the existence of their apparently substantial separate assets and income — encouraged the parties to be reasonable. Given the discussion of the issues involved, and the anticipated discovery of additional financial information, the Court ordered a second mediation to permit the parties another chance to resolve their disputes on their own. The Court did not "order" [Wife] to settle the case, nor did the Court prohibit [Wife] from bringing the parties' remaining controversies before the Court for a final hearing. The Court instructed the parties to "file your motion to be heard on the first motion docket after the mediation." This is a clear indication of the Court's intent to hear the parties' disputes should they not resolve them at mediation. Further, the Court has provided equal time to [Wife] and [Husband] to present their cases. The Court is charged with managing the proceedings before it, and the exercise of such reasonable control is not a constitutional violation of [Wife's] access to open courts.

(Footnotes omitted.)

Thus, the trial judge denied Wife's motion seeking his recusal from the case. The judge pointed out that he "has not shown any personal bias or prejudice against [Wife]," he "has not shown the objective appearance of partiality towards either party," he "has

not pre-determined the issues before it," and he "has not denied [Wife's] constitutional rights to open courts." The court found that, "subjectively, it is able to preside impartially over the proceedings, as the Court holds no bias for or prejudice against either party." Finally, the trial court noted that "a person of reasonable prudence, with full knowledge of the facts and circumstances before the Court, would not question the Court's impartiality."

On March 15, 2018, Wife filed an accelerated interlocutory appeal as of right pursuant to Supreme Court Rule 10B, § 2. Wife argues the trial court erred in refusing her motion for recusal based on statements and rulings the judge made at the hearing on February 2. First, Wife contends that before hearing any proof, the court prejudged factual issues that are to be determined at the final hearing. Second, Wife contends the court "severely" limited her ability to present proof at trial, and that this limitation "substantially infringed upon [her] constitutionally protected right to open courts and her opportunity to be heard by a fair and impartial court and demonstrated bias by the trial court." On March 21 Wife filed a motion to supplement her petition for recusal, which we granted on March 26. Husband requests an award of his attorney's fees on appeal.

On March 20 this Court entered an order directing Husband to file an answer to Wife's petition within fourteen days in accordance with section 2.05 of Supreme Court Rule 10B. Husband filed his answer on April 3. We have concluded that oral argument is not necessary for us to resolve the issues on appeal. *See* TENN. SUP. CT. R. 10B, § 2.06.

## II. ANALYSIS

Rule 10B directs us to review the trial court's ruling denying Wife's motion under a de novo standard of review and to "state with particularity the basis for [our] ruling on the recusal issue." TENN. SUP. CT. R. 10B, § 2.01. Wife, as the party seeking recusal, bears the burden of proving the trial court erred in denying her motion for recusal. *Groves v. Ernst-W. Corp.*, No. M2016-01529-COA-T10B-CV, 2016 WL 5181687, at *4 (Tenn. Ct. App. Sept. 16, 2016) (citing *Garner v. Garner*, No. W2016-01213-COA-T10B-CV, 2016 WL 4249479, at *2 (Tenn. Ct. App. Aug. 10, 2016)).

"'The right to a fair trial before an impartial tribunal is a fundamental constitutional right.'" *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)). The Tennessee Constitution provides, "No Judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he may be interested . . . ." TENN. CONST. art. VI, § 11. "This provision is intended 'to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor.'" *Bean*, 280 S.W.3d at 803 (quoting *Austin*, 87 S.W.3d at 470). As the Tennessee Supreme Court has written,

Litigants, as the courts have often said, are entitled to the "cold neutrality of an impartial court." *Kinard v. Kinard*, 986 S.W.2d 220, 227 (Tenn. Ct. App. 1998). Thus, one of the core tenets of our jurisprudence is that litigants have a right to have their cases heard by fair and impartial judges. *Id.* at 228. Indeed, "it goes without saying that a trial before a biased or prejudiced fact finder is a denial of due process." *Wilson v. Wilson*, 987 S.W.2d 555, 562 (Tenn. Ct. App. 1998). Accordingly, judges must conduct themselves "at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary" and "shall not be swayed by partisan interests, public clamor, or fear of criticism." TENN. SUP. CT. R. 10, Cannon 2(A), 3(B)(2).

*Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001).

The Tennessee Code of Judicial Conduct provides that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned . . . ." TENN. SUP. CT. R. 10, R.J.C. 2.11(A). One of the circumstances the Code identifies when a judge's impartiality may be questioned is when "[t]he judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding." TENN. SUP. CT. R. 10, R.J.C. 2.11(A)(1). The terms "bias" and "prejudice" refer to a state of mind or attitude that predisposes a judge in favor of or against a party. *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994).

To merit disqualification of a trial judge, "prejudice must be of a personal character, directed at the litigant, 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'"

*In re Conservatorship of Tate*, No. M2012-01918-COA-10B-CV, 2012 WL 4086159, at *2 (Tenn. Ct. App. Sept. 17, 2012) (quoting *Alley*, 882 S.W.2d at 821) (citations omitted)). A judge's bias must consist of "an antagonism toward the moving party." *Alley*, 882 S.W.2d at 821 (citing *United States v. Baker*, 441 F.Supp. 612, 616 (M.D. Tenn. 1977)). It is not problematic, however, if the bias reflects a judge's personal views on the subject matter at issue. *Id.* (citing 46 AM. JUR. 2D *Judges* § 167 (1969)). Moreover, "'[i]f the bias is based upon actual observance of witnesses and evidence given during the trial, the judge's prejudice does not disqualify the judge.'" *In re Conservatorship of Tate*, 2012 WL 4086159, at *2 (quoting *Alley*, 882 S.W.2d at 821) (citations omitted)). "[A]n opinion formed on the basis of what a judge properly learns during judicial proceedings, and comments that reveal that opinion, are not disqualifying unless they are so extreme that they reflect an utter incapacity to be fair." *Groves*, 2016 WL 5181687, at *5. "Judicial expressions of impatience, dissatisfaction, annoyance, and even anger towards counsel, the parties, or the case, will not ordinarily support a finding

of bias or prejudice unless they indicate partiality on the merits of the case." *Id.*; *see Wright v. Pate*, 117 S.W.3d 774, 778 (Tenn. Ct. App. 2002) ("'A feeling of ill will or, conversely, favoritism toward one of the parties to a suit are what constitute disqualifying bias or prejudice.'") (quoting *Caudill v. Foley*, 21 S.W.3d 203, 215 (Tenn. Ct. App. 1999)).

In ruling on a party's motion for recusal, a judge is required to apply both a subjective test and an objective test. *Runyon v. Runyon*, No. W2013-02651-COA-T10B, 2014 WL 1285729, at *8 (Tenn. Ct. App. Mar. 31, 2014).

> [A] recusal motion should be granted when "the judge has any doubt as to his or her ability to preside impartially in the case" or "'when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Davis*, 38 S.W.3d at 564-65 (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). Even if a judge believes he can be fair and impartial, the judge should disqualify himself when "'the judge's impartiality might be reasonably questioned'" because "the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Id.* (quoting TENN. SUP. CT. R. 10, Canon 3(E)(1)).

*Bean*, 280 S.W.3d at 805.

A judge's adverse rulings may constitute grounds for an appeal, but they are generally insufficient to establish grounds for recusal, even when they are erroneous, numerous, and continuous. *Duke v. Duke*, 398 S.W.3d 665, 671 (Tenn. Ct. App. 2012); *Alley*, 882 S.W.2d at 821; *see also Groves*, 2016 WL 5181687, at *5; *In re Conservatorship of Tate*, 2012 WL 4086159, at *2. "'If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case . . . .'" *In re Conservatorship of Tate*, 2012 WL 4086159, at *2 (quoting *Davis*, 38 S.W.3d at 565).

A.    Prejudgment of Factual Issues

Wife initially argues that the trial court improperly prejudged factual issues before hearing the parties' proof. First, Wife contends the court prejudged her request for *pendente lite* support because it did not permit Wife's counsel to explain the parties' financial situation at the time of the hearing or to clarify Wife's answer to the judge's questions about her income and finances. Wife discusses at length the merits of her request for *pendente lite* support and the ways in which the judge erred in denying her request for relief. However, the only order we are able to review in a Rule 10B appeal is the trial court's order denying the motion for recusal. TENN. SUP. CT. R. 10B, § 2.01;

*Duke*, 398 S.W.3d at 668. We "may not review the correctness or merits of the trial court's other rulings." *Duke*, 398 S.W.3d at 668.

To prevail on appeal, Wife must demonstrate the trial court's lack of impartiality or its personal bias or prejudice towards her or her attorney. Our review of the transcript from February 2, 2018, reveals that the judge treated both parties equally throughout the hearing. The court had several of the parties' motions before it that day, and it addressed each motion in turn. When it was time for the court to consider Wife's motion for *pendente lite* support, the judge first heard from Wife's attorney. The court asked to see the parties' tax returns in an effort to understand the parties' incomes before asking Wife about her finances. When Wife was unable to answer the judge's questions about how much money she received each month during the prior year or questions about the trust of which she was a beneficiary, the judge denied her request for *pendente lite* support and admonished Wife's attorney to be better prepared at the next hearing.

Wife argues the judge denied her the opportunity to be heard because he interrupted Wife's attorney and began questioning Wife's attorney and Wife herself about the source and amount of her income. As the trial court pointed out in its order denying Wife's motion for recusal, however, "[t]rial courts possess inherent, common-law authority to control their dockets and the proceedings in their courts," and "[t]heir authority is quite broad . . . ." *Hodges v. Attorney Gen.*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000); *see also* TENN. R. EVID. 611(a) (authorizing court to control presentation of evidence); *State Farm Mut. Auto. Ins. Co. v. Jones*, No. M2016-02423-COA-R3-CV, 2017 WL 3446823, at *3 (Tenn. Ct. App. Aug. 11, 2017). Wife has not shown that the judge lacked impartiality or acted with bias or prejudice in denying her request for *pendente lite* support during the hearing on February 2, as she must to succeed in this appeal. *See Wright*, 117 S.W.3d at 778-79 (stating that the manner in which a trial judge balances the requirements of adjudicating matters promptly and efficiently while also showing patience, dignity, and courtesy to attorneys and witnesses "is largely left to the judge's own discretion").

We find that, rather than prejudging Wife's right to *pendente lite* support, the judge listened to Wife's attorney, considered the circumstances, reviewed the documents the parties provided, and reached the decision that Wife was not entitled to the support she requested at that time. As the court wrote in its order denying Wife's motion for recusal, "During the hearing of the parties' competing motions to compel discovery, both parties revealed that they benefit from trusts, about which they have limited knowledge or information. Additionally, [Wife] testified that she has a nursing degree and the ability to generate income as a nurse."

On the issue of alimony, the judge made the comment that "nobody will be awarded any attorney's fees when I rule there's no alimony," but he later said, "I may give transitional alimony for a period of time . . . ." Thus, despite the judge's suggestion

that neither party may be entitled to alimony, he did not rule at the hearing on February 2 that he would not award alimony at the final hearing. Rather, his ruling was limited to denying Wife *pendente lite* alimony as of the hearing on February 2.

Wife also argues the trial court prejudged Husband's right to parenting time with the parties' child before the final hearing based on the judge's stated intention on February 2 to maximize Husband's time with the child when the parties presented their proof at trial. The record reflects that Husband was granted *pendente lite* parenting time pursuant to an order entered months earlier, on October 19, 2017, and that issue was not before the court during the hearing on February 2, 2018. The issue of maximizing Husband's time with the child arose only in passing when the court asked about the scheduling order and questioned the parties' attorneys about the ultimate issues in the case that would have to be decided at trial. Wife's attorney responded that the marriage was short-term and then stated, "It's mostly the issue of he wants more parenting time and, Your Honor, gave him *pendente lite*." The court said, "Okay. . . . Is there a problem with me maximizing time at the final hearing?" Wife's attorney explained why she did not believe Husband should have more time due to his alcohol consumption. The court asked about any DUIs or missed work and then told Wife's attorney to be prepared for Husband to be given "maximized time" at the final hearing.

Contrary to Wife's argument, the trial court did not prejudge Husband's right to any particular amount of time with the parties' child before hearing evidence that may be presented at the final hearing. Rather, the court was merely stating the law that Husband is entitled to maximum participation in the child's life and that Wife should be prepared for the court to follow the statutory requirements by awarding Husband maximized time at the final hearing. Tennessee Code Annotated section 36-6-106 directs courts to "order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors." Subsection (a) of the statute lists factors courts are to consider in determining a child's custody arrangement, and Tenn. Code Ann. § 36-6-406(d) addresses a parent's conduct that may adversely affect a child due to the parent's impairment resulting from drug, alcohol, or other substance abuse. Contrary to Wife's contention, the court did not suggest it would fail to consider evidence Wife may present at the final hearing regarding Husband's alcohol use in determining the parenting time it would ultimately award Husband in the permanent parenting plan.

We conclude from our review of the hearing transcript that the trial judge did not prejudge the issues of alimony, attorney's fees, or Husband's parenting time before the parties have had a chance to present evidence on these issues at the final hearing.

B.  Limiting the Parties' Opportunity to Present Evidence at Trial

Wife next argues that the trial judge erred in failing to recuse himself after he entered an order "severely limiting" Wife's time for presenting her proof at trial.  She contends this limitation demonstrates bias by the court and substantially infringes on her constitutionally protected right to open courts and her opportunity to be heard by a fair and impartial court.

We initially note that the trial judge did not treat Wife and Husband differently in limiting the time they would each have at the final hearing to present evidence and cross-examine the other's witnesses.  The judge stated that Wife and Husband would each have two and a half hours to present their cases and one hour for cross-examination. Moreover, the judge was discussing the contents of the scheduling order when he determined the amount of time each party would have to present their cases at trial, and the scheduling order is not available for our review in this appeal.  *See Duke*, 398 S.W.3d at 668 ("In a Tennessee Supreme Court Rule 10B appeal, the only order we may review is the trial court's order that denies a motion to recuse.").

Wife asserts her procedural and substantive due process constitutional rights have been violated by the trial court's limitation on her presentation of evidence at trial. "Procedural due process" requires that "individuals be given an opportunity to have their legal claims heard at a meaningful time and in a meaningful manner." *Lynch v. City of Jellico*, 205 S.W.3d 384, 391 (Tenn. 2006).  "Substantive due process," in contrast, "limits oppressive government action, such as deprivations of fundamental rights like the right to marry, have children, make child rearing decisions, determine child custody, and maintain bodily integrity." *Id.* at 391-92.  Wife is complaining about a limitation on her rights that has not yet occurred and may not occur if the parties settle their differences, the time the court sets aside for the trial is sufficient for both parties to present their evidence, or the final hearing is continued beyond the seven hours the court has initially indicated it will set aside for the trial.

> Tennessee courts have long recognized that "'the province of a court is to decide, not advise, and to settle rights, not to give abstract opinions,'" [*Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 203 (Tenn. 2009)] (quoting *State v. Wilson*, 70 Tenn. 204, 210 (1879)). Thus, Tennessee courts decide only "'legal controversies,'" *id.* (quoting *White v. Kelton*, 144 Tenn. 327, 232 S.W. 668, 670 (1921)), and a legal controversy exists "when the disputed issue is real and existing, and not theoretical or abstract, and when the dispute is between parties with real and adverse interests," *id.* (citations omitted).

*West v. Schofield*, 468 S.W.3d 482, 490 (Tenn. 2015).  We find that Wife is asking this Court for an advisory opinion because her constitutional due process claims are not yet

ripe for review. *See id.* at 490-91 (explaining that claim is not ripe if it involves "'uncertain or contingent future events that may or may not occur as anticipated or, indeed, may not occur at all'") (quoting *B & B Enters. of Wilson Cnty., LLC v. City of Lebanon*, 318 S.W.3d 839, 848 (Tenn. 2010)). "It is well-settled that the role of the court is to adjudicate and settle legal rights, not to give abstract or advisory opinions." *Thomas v. Shelby Cnty.*, 416 S.W.3d 389, 393 (Tenn. Ct. App. 2011). Accordingly, we decline to address Wife's due process claims at this time.

### C. Wife's Supplemental Petition

Wife filed a motion to supplement her petition six days after initiating this appeal. The basis for her supplemental petition is that the trial court denied her request to stay further proceedings in that court following its denial of her recusal motion pending our resolution of this interlocutory appeal.

Our docket shows that Wife filed a motion in this Court on March 16 asking us to stay further proceedings in the trial court until such time that we ruled on her Rule 10B appeal. Two motions in the underlying case were already scheduled to be heard by the trial court that same day. Wife's counsel informed the trial court that she had filed a motion for a stay with the Court of Appeals, and the trial court's clerk called this Court to determine whether Wife's motion had yet been ruled upon. The trial court delayed hearing the motions scheduled for that morning until third call of the motion docket to give the Court of Appeals an opportunity to rule on Wife's motion. Then, during the trial court's third call, the trial court announced that it intended to go forward with the scheduled motions because the Court of Appeals had not ruled on Wife's motion. Thereafter, the trial court heard and ruled on the motions scheduled for that day. In her supplemental petition, Wife asks that we set aside the trial court's modified scheduling order and other orders the trial court entered as a result of the hearing on March 16 and vacate the trial court's finding that Wife's motion to recuse and petition for recusal appeal were brought before the courts for an improper purpose.

Section 2.04 of Rule 10B provides that "[t]he filing of a petition for recusal appeal does not automatically stay the trial court proceeding." The section continues, stating, "However, either the trial court or the appellate court may grant a stay on motion of a party or on the court's own initiative, pending the appellate court's determination of the appeal." TENN. SUP. CT. R. 10B, § 2.04. The Court of Appeals granted Wife's motion for a stay on March 20, four days after the trial court's hearing on the scheduled motions. Based on the provisions of Rule 10B, the timing of the trial court's hearing, and the timing of our ruling on Wife's motion, we conclude that the trial court did not act improperly in hearing the motions scheduled for that day and entering orders as a result.[3]

---

[3]We note that Rule 10B precludes a trial judge from taking further action in a case when a motion for recusal is pending against him or her. TENN. SUP. CT. R. 10B, § 1.02. In this case, Wife filed her motion

- 21 -

Based on our ruling that the trial judge did not err in denying Wife's motion seeking his recusal, we deny Wife the relief she seeks in her supplemental petition.

### D. Husband's Request for Fees

Husband seeks an award of his attorney's fees incurred on appeal pursuant to Tenn. Code Ann. § 36-5-103(c)[4] and Tenn. Code Ann. § 27-1-122.[5] Section 36-5-103(c) authorizes a court to award reasonable attorney's fees to the prevailing party in actions to enforce a decree for alimony and/or child support as well as actions involving a child's custody. Tenn. Code Ann. § 36-5-103(c); *see Evans v. Evans*, No. M2002-02947-COA-R3-CV, 2004 WL 1882586, at *10-14 (Tenn. Ct. App. Aug. 23, 2004). Because this appeal concerns the trial court's denial of Wife's motion for recusal rather than alimony, child support, or custody, section 36-5-103(c) does not apply to this case and Husband is unable to recover his fees pursuant to this statute.

Section 27-1-122 is Tennessee's frivolous appeal statute, and this statute gives an appellate court discretion to award fees to the prevailing party if the appellate court determines that the appeal is frivolous. Tenn. Code Ann. § 27-1-122; *Eberbach v. Eberbach*, 535 S.W.3d 467, 475 (Tenn. 2017); *see also Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009). "'An appeal is deemed frivolous if it is devoid of merit or if it has no reasonable chance of success.'" *GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535, 547 (Tenn. Ct. App. 2005) (quoting *Wakefield v. Longmire*, 54 S.W.3d 300, 304 (Tenn. Ct. App. 2001). Appellate courts exercise their discretion to award fees under

---

for recusal on February 23, the trial court denied Wife's motion on March 13, and the court did not take further action in the case until March 16, three days after denying Wife's motion for recusal. Thus, the trial court properly complied with the mandates of Rule 10B, § 1.02.

[4]Tennessee Code Annotated section 36-5-103(c) provides:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

[5]Tennessee Code Annotated section 27-1-122 provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

this statute "'sparingly so as not to discourage legitimate appeals.'" *Eberbach*, 535 S.W.3d at 475 (quoting *Whalum v. Marshall*, 224 S.W.3d 169, 181 (Tenn. Ct. App. 2006)); *see also Chiozza*, 315 S.W.3d at 493. We do not find this appeal to be so devoid of merit that it warrants the award of damages under Tenn. Code Ann. § 27-1-122. Accordingly, we deny Husband's request for attorney's fees under the frivolous appeal statute.

## III. CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Mariel Bentz Rich, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE