FILED
05/18/2022
Clerk of the
Appellate Courts

IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 24, 2022 Session[1]

## METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, ET AL. v. TENNESSEE DEPARTMENT OF EDUCATION, ET AL.

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Davidson County**
No. 20-0143-II      Anne C. Martin, Chancellor

_____

**No. M2020-00683-SC-R11-CV**

_____

This case is before us on an interlocutory appeal limited to a single claim: Plaintiffs'[2] constitutional challenge to the Tennessee Education Savings Account Pilot Program (the "ESA Act" or the "Act"), Tenn. Code Ann. §§ 49-6-2601 to -2612, under article XI, section 9 of the Tennessee Constitution (the "Home Rule Amendment" or the "Amendment"). The trial court held that Plaintiffs had standing to pursue this claim and denied Defendants' motions to dismiss on that basis. The court held that the ESA Act is unconstitutional under the Home Rule Amendment and granted Plaintiffs' motion for summary judgment on this claim. The trial court then sua sponte granted Defendants an interlocutory appeal, and the Court of Appeals granted their application for an interlocutory appeal by permission pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. The Court of Appeals affirmed the trial court's judgment with respect to the issue of standing and the issue of the constitutionality of the ESA Act under the Home Rule Amendment. We hold that Plaintiffs have standing to bring their Home Rule Amendment claim and affirm the judgment of the Court of Appeals with respect to that issue. However, we hold that the ESA Act does not implicate the Home Rule Amendment such that the Act is not rendered unconstitutional by the Amendment, and we reverse the judgment of the Court of Appeals with respect to that issue. Accordingly, the judgment of the trial court with respect to Plaintiffs' claim under the Home Rule Amendment is vacated, and the case is remanded to the trial court for entry of a judgment dismissing that claim, for further proceedings consistent with this opinion, and for consideration of Plaintiffs' remaining claims.

---

[1] This case was originally heard on June 3, 2021. Due to the untimely passing of Justice Cornelia A. Clark, this case was re-argued on February 24, 2022.

[2] The Metropolitan Nashville Board of Public Education was also a plaintiff in the trial court. It was dismissed for lack of standing, and that judgment is not before the Court on this interlocutory appeal. The Board, therefore, is not a party to this appeal.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed in Part and Reversed in Part; Case Remanded to the Trial Court**

ROGER A. PAGE, C.J., delivered the opinion of the court, in which JEFFREY S. BIVINS, J., and THOMAS R. FRIERSON, II, SP. J., joined. SHARON G. LEE, J., filed an opinion concurring in part and dissenting in part, in which HOLLY KIRBY, J., joined. SARAH K. CAMPBELL, J., not participating.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Jim Newsom, Special Counsel; Stephanie A. Bergmeyer, Senior Assistant Attorney General; and Matt R. Dowty, Assistant Attorney General, for the appellants, Tennessee Department of Education, Governor of the State of Tennessee, and Commissioner of the Tennessee Department of Education.

Justin Owen, Nashville, Tennessee, for the appellant, Star Brumfield.

Jason I. Coleman, Brentwood, Tennessee; Arif Panju, Austin, Texas; and David G. Hodges and Keith Neely, Arlington, Virginia, for the appellants, Natu Bah and Builiguissa Diallo.

Brian K. Kelsey and Daniel R. Suhr, Chicago, Illinois, for the appellants, Greater Praise Christian Academy, Sensational Enlightenment Academy Independent School, Ciera Calhoun, Alexandria Medlin, and David Wilson, Sr.

Robert E. Cooper, Jr., Allison L. Bussell, and Melissa Roberge, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County.

Marlinee C. Iverson and E. Lee Whitwell, Memphis, Tennessee, for the appellee, Shelby County Government.

Ty E. Howard and Caroline D. Spore, Nashville, Tennessee; and Chris Patterson, Memphis, Tennessee, for the amici curiae, The Alliance for School Choice, Southern Christian Leadership Conference-Memphis Chapter, and Latinos for Tennessee.

Yvonne K. Chapman, Memphis, Tennessee, for the amici curiae, Rep. Glen Casada, former Rep. Bill Dunn, former Sen. Dolores Gresham, Rep. Esther Helton, former Rep. Andy Holt, Sen. Jack Johnson, Sen. Brian Kelsey, Rep. Sabi Kumar, Rep. William Lamberth, Rep. Dennis Powers, former Rep. Robin Smith, and Rep. Mark White.

Robert F. Parsley, Chattanooga, Tennessee; and Leslie Davis Hiner, Indianapolis, Indiana, for the amici curiae, EdChoice, Inc. and Foundation for Excellence in Education, Inc.

Christopher M. Wood, Thomas H. Castelli, and Stella Yarbrough, Nashville, Tennessee; Christine Bischoff and Lindsey Rubenstein, Jackson, Mississippi; and David G. Sciarra, Wendy Lecker, and Jessica Levin, Newark, New Jersey, for the amici curiae, McEwen Plaintiffs, Tennessee NAACP, Pastors for Tennessee Children and Pastors for Children.

Richard L. Colbert, Nashville, Tennessee, for the amici curiae, Tennessee Education Association, Metropolitan Nashville Education Association, and United Education Association of Shelby County.

# OPINION

## I. Factual and Procedural Background

Enacted by the Tennessee General Assembly in 2019, the Education Savings Account Pilot Program, see 2019 Tenn. Pub. Acts ch. 506 (codified at Tenn. Code Ann. §§ 49-6-2601 to -2612), establishes a program allowing a limited number of eligible students[3] to directly receive their share of state and local education funds, which would ordinarily be provided to the public-school system they attend, to pay for a private school education and associated expenses. The maximum number of eligible students allowed to participate in the program increases over a five-year period from 5,000 students in year one to 15,000 students in year five. Tenn. Code Ann. § 49-6-2604(c) (2020). The Act provides that only students who are zoned to attend a school in Metro Nashville Public Schools, Shelby County Schools, or the Achievement School District ("ASD")[4] are eligible to participate in the program.[5]

---

[3] See Tenn. Code Ann. § 49-6-2602(3) (defining "eligible student").

[4] The ASD is not a party to this appeal, and the constitutionality of the ESA Act as it affects the ASD is not an issue before this Court.

[5] The Act defines an "eligible student," in part, as one who:

(i)     Is zoned to attend a school in an [sic] [local education agency ("LEA")], excluding the achievement school district (ASD), with ten (10) or more schools:
    *(a)* Identified as priority schools in 2015, as defined by the state's accountability system pursuant to § 49-1-602;
    *(b)* Among the bottom ten percent (10%) of schools, as identified by the department in 2017 in accordance with § 49-1-602(b)(3); and
    *(c)* Identified as priority schools in 2018, as defined by the state's accountability system pursuant to § 49-1-602; or
(ii)    Is zoned to attend a school that is in the ASD on May 24, 2019[.]

The Metropolitan Government of Nashville and Davidson County ("Metro"), Shelby County Government ("Shelby County"), and Metropolitan Nashville Board of Public Education ("Metro School Board") filed a declaratory judgment action that named as defendants Governor Bill Lee, the Tennessee Department of Education Commissioner, and the Tennessee Department of Education (collectively, the "State"). In their complaint, Metro, Shelby County, and the Metro School Board asserted that the ESA Act violates several provisions of the Tennessee Constitution, namely the Home Rule Amendment, Tenn. Const. art. XI, § 9, cl. 2; the equal protection clauses, id. art. I, § 8; id. art. XI, § 8; and the education clause, id. art. XI, § 12. The trial court allowed parents of public-school children in Davidson and Shelby counties (the "Natu Bah Intervenors") in addition to two independent schools, Greater Praise Christian Academy and Sensational Enlightenment Academy Independent School, and additional parents wanting their children to participate in the ESA program (collectively, the "Greater Praise Intervenors") to intervene and participate as defendants.

On March 6, 2020, the Greater Praise Intervenors filed a motion to dismiss, arguing that the constitutional claims raised by Metro, Shelby County, and the Metro School Board were without merit and that the Metro School Board did not have standing to challenge the Act. Similarly, on March 11, 2020, the State filed a motion to dismiss, asserting that none of the suing entities had standing, that the complaint failed to state a claim upon which relief could be granted, and that the equal protection claim and education clause claim were not ripe for review.[6] Metro, Shelby County, and the Metro School Board filed a motion for summary judgment on March 27, 2020, maintaining that the Act violated the Home Rule Amendment. The Natu Bah Intervenors filed a motion for judgment on the pleadings on April 15, 2020, arguing that the complaint failed to state a claim upon which relief could be granted.

The trial court held a hearing on April 29, 2020, and issued its memorandum and order on May 4, 2020. While the court dismissed the Metro School Board as a plaintiff for lack of standing,[7] it granted Metro and Shelby County's motion for summary judgment, concluding that the ESA Act violates the Home Rule Amendment, and enjoined the State from implementing the Act. Thus, the State, Greater Praise Intervenors, and Natu Bah

Tenn. Code Ann. § 49-6-2602(3)(C). It is undisputed by the parties that, absent future legislative action, only Metro Nashville Public Schools, Shelby County Schools, and the Achievement School District fall within the enumerated statutory requirements.

[6] The State also later filed a motion to consolidate the case with the similar case of McEwen v. Lee, No. 20-0242-II.

[7] As previously noted, the issue of standing as it relates to the Metro School Board is not before us on appeal.

Intervenors' (collectively, the "Defendants") motions to dismiss and for judgment on the pleadings as they applied to the Home Rule Amendment claim were denied. The trial court took under advisement pending motions addressing Metro and Shelby County's equal protection claim and their education clause claim,[8] and deferred ruling on the motions in the case of McEwen v. Lee. The trial court sua sponte granted permission to Defendants to seek an interlocutory appeal under Tennessee Rule of Appellate Procedure Rule 9(a). On May 13, 2020, the trial court denied Defendants' joint motion for a stay pending appeal.

The State, Greater Praise Intervenors, and Natu Bah Intervenors filed applications for permission to appeal to the Court of Appeals under Rule 9 of the Tennessee Rules of Appellate Procedure. The State and Natu Bah Intervenors also moved the intermediate appellate court for a stay pending appeal. On May 19, 2020, the Court of Appeals declined to review the trial court's order denying a stay but granted Defendants' applications for appeal. The intermediate appellate court specified the following issues for review:

> 1. Whether the trial court erred in ruling that the county government plaintiffs have standing to challenge the constitutionality of the ESA Program under the Home Rule Amendment.

> 2. Whether the trial court erred in ruling that the ESA Program violates the Home Rule Amendment, article XI, section 9 of the Tennessee Constitution.

The Court of Appeals expedited the appeal, and this Court declined to assume jurisdiction of the case or to review the denial of the stay on June 4, 2020. The intermediate appellate court ultimately affirmed the trial court, holding that Metro and Shelby County had standing to challenge the ESA Act under the Home Rule Amendment and that the Act was unconstitutional pursuant to the Home Rule Amendment. Metro. Gov't of Nashville & Davidson Cnty. v. Tenn. Dept. of Educ., No. M2020-00683-COA-R9-CV, 2020 WL 5807636, at *8 (Tenn. Ct. App. Sept. 29, 2020), perm. app. granted, (Tenn. Feb. 4, 2021). We granted Defendants' applications for permission to appeal.

## II. Scope and Standard of Review

This is an interlocutory appeal. The Court's review is therefore limited to those questions clearly within the scope of the issues certified for interlocutory appeal. Funk v. Scripps Media, Inc., 570 S.W.3d 205, 210 (Tenn. 2019). As noted above, in their complaint, Plaintiffs challenged the constitutionality of the ESA Act under (1) the Home

---

[8] These claims are not before this Court on appeal.

- 5 -

Rule Amendment; (2) the equal protection clauses; and (3) the education clause. This appeal, however, raises only one of those three constitutional challenges—the Home Rule Amendment challenge and Plaintiffs' standing to bring that challenge.

The trial court decided the issue of standing on the State's motion to dismiss pursuant to Tennessee Rule of Civil Procedure 12.02(6).[9] The Court reviews the motion to dismiss on the issue of standing de novo with no presumption of correctness. Effler v. Purdue Pharma, L.P., 614 S.W.3d 681, 687 (Tenn. 2020). On a motion to dismiss, the Court presumes all factual allegations to be true and construes them in favor of the plaintiff. Foster v. Chiles, 467 S.W.3d 911, 914 (Tenn. 2015). This is equally true with respect to factual allegations regarding standing. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992) (For the purposes of a challenge to standing "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." (second alteration in original) (internal quotation marks omitted)).

The trial court decided the merits of the Home Rule Amendment claim on Plaintiffs' motion for summary judgment. "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Martin v. Rolling Hills Hosp., LLC, 600 S.W.3d 322, 330 (Tenn. 2020) (quoting Tenn. R. Civ. P. 56.04). "We review a trial court's decision on a motion for summary judgment de novo without a presumption of correctness." Id. In this case, review of Plaintiffs' claim requires consideration of the constitutionality of the ESA Act under the Home Rule Amendment. It, therefore, entails both constitutional and statutory construction. Issues of constitutionality and of constitutional and statutory construction are all questions of law, which the Court reviews de novo with no presumption of correctness. Willeford v. Klepper, 597 S.W.3d 454, 464 (Tenn. 2020).

## III. Analysis

### A. Standing

___

[9] It is not entirely clear from the discussion of standing in the trial court's memorandum and order denying Defendants' motions and granting Plaintiffs' motion for summary judgment whether the court concluded Plaintiffs have standing for purposes of all three constitutional claims or merely for purposes of their Home Rule Amendment claim. In summarizing the motions pending before it, however, the court seems to have indicated that it was deferring ruling on the issue of standing with respect to all other claims. Moreover, the certified issue and the decision of the Court of Appeals address standing only for purposes of the Home Rule Amendment claim. This Court's consideration of standing, therefore, is limited to the Home Rule Amendment claim.

The United States Constitution confines the jurisdiction of the federal courts to "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. Although the Constitution of Tennessee does not include a similar express limitation on the exercise of judicial power, Norma Faye Pyles Lynch Family Purpose LLC v. Putnam County, 301 S.W.3d 196, 202 (Tenn. 2009) (citing Miller v. Miller, 149 Tenn. 463, 261 S.W. 965, 971 (1924)), Tennessee courts have long recognized that "the province of a court is to decide, not advise, and to settle rights, not to give abstract opinions," id. at 203 (quoting State v. Wilson, 70 Tenn. 204, 210 (1879)). Tennessee courts therefore decide only "legal controversies." Id. (quoting White v. Kelton, 232 S.W. 668, 670 (Tenn. 1921)). To determine whether a particular case involves a legal controversy, Tennessee courts utilize justiciability doctrines that "mirror the justiciability doctrines employed by the United States Supreme Court and the federal courts." Id.; see also West v. Schofield, 468 S.W.3d 482, 489–90 (Tenn. 2015). One of these justiciability doctrines—standing—is disputed in this appeal.[10]

To determine whether standing exists, a court must focus on the party bringing the lawsuit rather than on the merits of the claim. Fisher v. Hargett, 604 S.W.3d 381, 396 (Tenn. 2020); Metro. Air Rsch. Testing Auth., Inc. v. Metro. Gov't of Nashville & Davidson Cnty., 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992); see also Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n, 576 U.S. 787, 799–800 (2015). The weakness of a claim on the merits must not be confused with a lack of standing. Ariz. State Legislature, 576 U.S. at 800. While standing "often turns on the nature and source of the claim asserted," it "in no way depends on the merits" of the claim. Warth v. Seldin, 422 U.S. 490, 500 (1975); see also Fisher, 604 S.W.3d at 396. Rather, to establish standing, three elements must be satisfied:

1) a distinct and palpable injury; that is, an injury that is not conjectural, hypothetical, or predicated upon an interest that a litigant shares in common with the general public; 2) a causal connection between the alleged injury and the challenged conduct; and 3) the injury must be capable of being redressed by a favorable decision of the court.

Fisher, 604 S.W.3d at 396 (citing City of Memphis v. Hargett, 414 S.W.3d 88, 97 (Tenn. 2013)). In this case, the crux of the controversy involves the first element.

---

[10] Another justiciability doctrine is ripeness. See Norma Faye Pyles Lynch Fam. Purpose LLC, 301 S.W.3d at 203. The State raises ripeness for the first time in its brief in this Court and argues that, "until the ESA Pilot Program is implemented, it is impossible to know what, if any, fiscal impact it will have on Plaintiffs." While there is a serious question of waiver as to the State's ripeness argument in this interlocutory appeal, we note that this argument is based solely on the fiscal impact of the statute. Because our decision as to standing is based on a separate alleged injury not implicated by the State's ripeness argument, we decline to dismiss this appeal for lack of ripeness.

The plaintiff bears the burden of establishing these elements "'by the same degree of evidence' as other matters on which the plaintiff bears the burden of proof." ACLU of Tenn. v. Darnell, 195 S.W.3d 612, 620 (Tenn. 2006) (quoting Petty v. Daimler/Chrysler Corp., 91 S.W.3d 765, 767 (Tenn. Ct. App. 2002)). The degree of evidence depends, of course, upon the stage of litigation at which standing is challenged. See Petty, 91 S.W.3d at 767; see also Lujan, 504 U.S. at 561 ("The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." (citations omitted)). In this case, Defendants challenged standing through a motion to dismiss. Accordingly, Plaintiffs' factual allegations are presumed to be true and are construed in their favor. Foster, 467 S.W.3d at 914; see also Lujan, 504 U.S. at 561. Applying these standards, we conclude that Plaintiffs' allegations suffice to establish standing to contest the constitutionality of the ESA Act under the Home Rule Amendment.

The portion of the Home Rule Amendment at issue in this appeal provides:

[A]ny act of the General Assembly private or local in form or effect applicable to a particular county or municipality either in its governmental or its proprietary capacity shall be void and of no effect unless the act by its terms either requires the approval by a two-thirds vote of the local legislative body of the municipality or county, or requires approval in an election by a majority of those voting in said election in the municipality or county affected.

Tenn. Const. art. XI, § 9, cl. 2. As this Court has previously explained, the Home Rule Amendment was added "to strengthen local self-government." Civil Serv. Merit Bd. of Knoxville v. Burson, 816 S.W.2d 725, 728–29 (Tenn. 1991); see also Farris v. Blanton, 528 S.W.2d 549, 551 (Tenn. 1975) ("The whole purpose of the Home Rule Amendment was to vest control of local affairs in local governments, or in the people, to the maximum permissible extent."). "The effect of the home rule amendments was to fundamentally change the relationship between the General Assembly and these types of municipalities, because such entities now derive their power from sources other than the prerogative of the legislature." S. Constructors, Inc. v. Loudon Cnty. Bd. of Educ., 58 S.W.3d 706, 714 (Tenn. 2001).

In their claim that the ESA Act is void under the Home Rule Amendment, Plaintiffs have alleged a distinct and palpable injury to the legal interest the Home Rule Amendment was enacted to protect—local control of local affairs. See Town of Black Brook v. State, 362 N.E.2d 579, 581 (N.Y. 1977) (holding that a locality has standing "when an act of the State Legislature is alleged to have encroached upon the powers of a locality in violation

of the home rule article," because "when a home rule challenge is brought, the powers the locality is seeking to protect are not suffered at the will of the State Legislature, but directly and specifically guaranteed by the Constitution"); Town of Dartmouth v. Greater New Bedford Reg'l Vocational Tech. High Sch. Dist., 961 N.E.2d 83, 96 (Mass. 2012) ("[A] municipality has standing to raise a claim that a legislative enactment violates the Home Rule Amendment, which restricts the Legislature's power to act in relation to cities and towns."). Accordingly, having concluded that Plaintiffs satisfied their burden of establishing standing by alleging the ESA Act violates their constitutionally protected interest in local control of local affairs, we affirm the Court of Appeals' decision that Plaintiffs have standing to challenge the constitutionality of the Act under the Home Rule Amendment. We reiterate that this determination on the issue of standing "in no way depends on the merits" of Plaintiffs' claim. Warth, 422 U.S. at 500.

### B.  The Home Rule Amendment

As previously noted, the portion of the Home Rule Amendment at issue is found at article XI, section 9, clause 2 of the Tennessee Constitution, which provides:

> [A]ny act of the General Assembly private or local in form or effect applicable to a particular county or municipality either in its governmental or its proprietary capacity shall be void and of no effect unless the act by its terms either requires the approval by a two-thirds vote of the local legislative body of the municipality or county, or requires approval in an election by a majority of those voting in said election in the municipality or county affected.

The ESA Act does not require the approval by a two-thirds vote of the local legislative body of Plaintiffs or require approval in an election by a majority of those voting in said election. Consequently, if the ESA Act implicates the Home Rule Amendment, the Act is unconstitutional and void thereunder. If the Act does not implicate the Amendment, Plaintiffs' constitutional challenge fails as a matter of law.

Like the Court of Appeals, we too find on the basis of the language of the Home Rule Amendment three requirements for its application: 1) the statute in question must be local in form or effect; 2) it must be applicable to a particular county or municipality; and 3) it must be applicable to the particular county or municipality in either its governmental or proprietary capacity. In this case, we find dispositive and so limit our analysis to the second requirement—that the ESA Act must be "applicable to" Plaintiffs in order to implicate the Home Rule Amendment.

By its terms, the ESA Act applies to Local Education Agencies ("LEAs"). See Tenn. Code Ann. § 49-6-2602(3)(C) (2020) (defining an "eligible student" to participate in the ESA program as one attending a school in certain limited LEAs); id. § 49-6-2602(7)

(defining an LEA by reference to Tenn. Code Ann. § 49-1-103 (2020), which defines an LEA as "any county school system, city school system, special school district, unified school system, metropolitan school system or any other local public-school system or school district created or authorized by the general assembly"). By its terms, the ESA Act does not facially apply to cities or counties such as Plaintiffs. However, the trial court and intermediate appellate court found, and Plaintiffs contend in this Court, that the ESA Act is applicable to them within the meaning of the Home Rule Amendment. We disagree.

The trial court found that the ESA Act is applicable to Plaintiffs because of what it viewed as the inseparable partnership between the LEAs and Plaintiffs. The trial court explained that "school systems (which are the same as LEAs) cannot be viewed as separate and distinct from the local governments that fund them. They are truly in a partnership." The Court of Appeals similarly relied on the financial relationship between Plaintiffs and their respective LEAs in finding that the ESA Act is applicable to Plaintiffs. As the Court of Appeals summarized:

> We have already addressed the LEA argument in the context of standing. Tennessee Code Annotated section 49-1-103(2) defines an LEA as "any county school system, city school system, special school district, unified school system, metropolitan school system or any other local public[-]school system or school district created or authorized by the general assembly." Thus, LEAs include metropolitan and county school systems. Giving an entity a new name does not change the nature of the entity or its relationship to the county government that funds it.

Metro. Gov't of Nashville & Davidson Cnty., 2020 WL 5807636, at *4. In particular, the Court of Appeals noted that Tennessee Code Annotated section 49-6-2605(b)(1), which has been characterized as the "counting requirement," requires that each participating student still be counted in the enrollment figures for the LEA in which the student resides. This results in Plaintiffs being required to appropriate, tax, and fund their LEAs for those participating students. The Court of Appeals characterized the effect of the counting requirement, in conjunction with the maintenance of effort statute, as inflating the amount of local taxes that must be raised and appropriated by Plaintiffs and keeping Plaintiffs' appropriations for the county school system artificially high. Id. at *3 n.1.

In this Court, Plaintiffs have argued that while the ESA Act applies in form to LEAs, it applies in effect to them. According to Plaintiffs, they must tax and fund their LEAs under the ESA Act at the same level as when the participating students were still attending schools in the LEAs. The ESA Act, thus, impacts Plaintiffs' funding of public education and so, according to Plaintiffs, is applicable to them.

The Natu Bah Intervenors, and now the State as well, argue that the lower courts and Plaintiffs conflate two distinct requirements for the application of the Home Rule Amendment and the distinct language used in those two requirements—namely, that 1) the statute in question must be "local in form or *effect*"; and that 2) it must be "*applicable to* a particular county or municipality." The State asserts that, for purposes of the Home Rule Amendment, the common understanding of the phrase "applicable to" is that the statute "regulates" or "governs" the county or municipality.[11] We agree.

It goes without saying that, among the many functions a statute may have, one primary function is to govern or regulate not only certain subject matters—such as education—but particular classes of people or entities. See, e.g., State v. Blockman, 615 S.W.2d 672, 674–75 (Tenn. 1981). This Court has previously stated that "[r]egulate, as defined by lexicographers, is to adjust by rule or method, to direct, to rule, to govern, to methodize, to arrange. Every element of this definition involves restraint, *the exercise of a power over a thing by which its activities are ruled or adjusted, or directed to certain ends*." State ex rel. Saperstein v. Bass, 152 S.W.2d 236, 238 (Tenn. 1941) (emphasis added) (quoting City of Nashville v. Linck, 80 Tenn. 499, 512 (1883)); see also Silverman v. City of Chattanooga, 57 S.W.2d 552, 552 (Tenn. 1933) ("The word regulate is defined . . . as meaning, 'to adjust or control by rule, method, or governing principles or laws.'").

Here, we conclude that the ESA Act regulates and governs only the conduct of the LEAs, not of the Plaintiffs. Tennessee Code Annotated section 49-6-2605(b)(1) specifically states that "[f]or the purpose of funding calculations, each participating student must be counted in the enrollment figures for the LEA in which the participating student resides." The practical impact of this language was explained by the Greater Praise Intervenors at oral argument: "The language of the [ESA Act] sets *responsibilities on the LEA as to how they count*. [The LEAs] then turn those counts over to the counties, but it's not that the county is doing any different counting. It's the LEA that's doing a different count and then turning those numbers over to the county, *which then responds according to formula*." (Emphasis added).[12] In other words, it is the conduct of the LEA in how it

[11] See February 24, 2022 Oral Argument at 12:50, Metro. Gov't of Nashville & Davidson Cnty., No. M2020-00683-SC-R11-CV (Tenn. Feb. 24, 2022), https://youtu.be/vqZXyQz-6Uc ("When we talk about something being applicable to as lawyers and as courts, I think the common understanding is that a law applies if it governs or if it regulates the entity."); see also June 3, 2021 Oral Argument at 12:40, Metro. Gov't of Nashville & Davidson Cnty., No. M2020-00683-SC-R11-CV (Tenn. June 3, 2021), https://youtu.be/bWibEJvm8PU ("I think that when you're talking about a law in particular applicable to means that it regulates somebody or something.").

[12] This understanding of the mechanics of the counting requirement was not disputed by the Plaintiffs at oral argument. Moreover, the description of the counting requirement is supported by Tennessee Code Annotated section 49-2-203(a)(9)(A)(i), which "[r]equire[s] the director of schools and the chair of the local board of education to prepare a budget on forms furnished by the commissioner, and when the budget has been approved by the local board, to submit the budget to the appropriate local

counts its students that the Act governs and regulates. The obligations of the counties to fund the LEAs are derived from other statutory provisions related to school funding outside of the ESA Act. See, e.g., Tenn. Code Ann. § 49-3-356(a) (2020) ("Every local government shall appropriate funds sufficient to fund the local share of the BEP."); Tenn. Code Ann. § 49-3-315 (2020) (requiring the county trustee, in cooperation with the county director of schools, to distribute "[a]ll school funds for current operation and maintenance purposes collected by [the] county" pro rata among all LEAs in the county in accordance with weighted full-time equivalent average daily attendance ("WFTEADA")); Tenn. Code Ann. §49-3-307(a)(10) (2020) (outlining the considerations for determining the local portion of the BEP). See generally Tenn. Comptroller of the Treasury, Basic Education Program (BEP), https://comptroller.tn.gov/office-functions/research-and-education-accountability/interactive-tools/bep.html (last visited May 3, 2022). We simply do not agree with Plaintiffs that the effects of the interplay between the ESA's counting requirement and the statutes establishing their funding obligations are enough to trigger the application of the Home Rule Amendment. While Plaintiffs may be affected by the Act, we do not agree with the dissent that this is enough to render the ESA Act "applicable to" them for purposes of the Home Rule Amendment.[13]

---

legislative body," and section 49-3-351(d), which provides that "the [Basic Education Program] ("BEP")] of every LEA will be calculated on the basis of prior year [enrollment figures,]" including average daily membership ("ADM"), see Tenn. Code Ann. § 49-3-302(2) (2020), full-time equivalent average daily attendance ("FTEADM"), see id. § 49-3-302(9), or identified and served special education students. LEAs are tasked with reporting average daily membership for purposes of funding at various points throughout the year. See Tenn. Dep't of Educ., Off. of Loc. Fin., Basic Education Program Handbook for Computation 70–71 (2018), https://www.tn.gov/content/dam/tn/stateboardofeducation/documents/bepcommitteeactivities/2019-bep/BEPHandbook%20revised%20September%202018.pdf (last visited May 3, 2022).

[13] This interpretation is consistent with our principles of constitutional construction, particularly the presumption of precision in language to which this Court has ascribed for over sixty years. See Shelby Cnty. v. Hale, 292 S.W.2d 745, 748 (Tenn. 1956) ("[I]t will be presumed that the language thereof has been employed with sufficient precision to convey [the intent of the people.]"); Hooker v. Haslam, 437 S.W.3d 409, 426 (Tenn. 2014); see also Planned Parenthood of Middle Tenn. v. Sundquist, 38 S.W.3d 1, 14 (Tenn. 2000) ("No words in our Constitution can properly be said to be surplusage . . . ."); Wallace v. Metro. Gov't of Nashville & Davidson Cnty., 546 S.W.3d 47, 52 (Tenn. 2018) ("We presume that the Legislature intended each word in a statute to have a specific purpose and meaning." (quoting Arden v. Kozawa, 466 S.W.3d 758, 764 (Tenn. 2015))); Welch v. State, 289 S.W. 510, 511 (Tenn. 1926) (noting that the presumption is particularly pertinent when considering the use of two or more different words or terms within the same provision of the Constitution). As noted above, Plaintiffs contend that the ESA Act is applicable to them for purposes of the Home Rule Amendment based on the asserted resulting financial effect of the ESA Act on them. Thus, Plaintiffs ask that the Court effectively read the phrase "applicable to" as synonymous with the phrase "having an effect on." We reject this construction. Such a construction would require the Court to assume that the drafters of the Home Rule Amendment were imprecise in their choice of two distinct terms, "applicable" and "effect," within the very same provision of the Constitution,

The Court also rejects the trial court's finding that Plaintiffs are so intimately related to their respective LEAs as to render them one and the same, thus making the ESA Act applicable to Plaintiffs. This argument is contrary to this Court's long-standing precedent with respect to the structure and operation of the educational system under Tennessee law. That jurisprudence establishes beyond refute that the LEAs are distinct from the county or municipal governments. See State ex rel. Weaver v. Ayers, 756 S.W.2d 217, 225 (Tenn. 1988) (describing the distinct roles and responsibilities of the State, the county boards of education, and the county governments, and noting the limited role of the county governments in the provision of education in Tennessee); see also Putnam Cnty. Educ. Ass'n. v. Putnam Cnty. Comm'n., No. M2003-03031-COA-R3-CV, 2005 WL 1812624, at *4–5 (Tenn. Ct. App. Aug. 1, 2005) (noting the separate origins, functions, and management of county governments and local boards of education); Rollins v. Wilson Cnty. Gov't, 154 F.3d 626, 630 (6th Cir. 1998) ("Under Tennessee law, the school systems are separate from the county governments. The two entities have separate origins, functions, and management."). The separateness of Plaintiffs and their respective LEAs is not ameliorated by their financial connections. As another panel of the Court of Appeals noted in a decision only months before that court's decision in this case, "[c]ounties and school systems perform separate functions. The fact that there are financial connections between a local school system and local government does not detract from the essentially separate functions of these two entities." Young v. Stamey, No. E2019-00907-COA-R3-CV, 2020 WL 1452010, at *8 (Tenn. Ct. App. Mar. 25, 2020) (citation omitted).

This argument also is contrary to the Court's precedent establishing that, while county boards of education operate in a sense as county government entities through their role in the educational partnership between themselves, the State, and the county governments, the county boards of education themselves are not bestowed with home rule authority. See S. Constructors, 58 S.W.3d at 715 n.10. In the absence of home rule authority, LEAs cannot logically be deemed to be endowed with the protection of the Home Rule Amendment.[14]

---

and that the drafters did not intend each of those terms to have a specific purpose and meaning. We decline to make such an assumption.

[14] We find further support for our construction of the Home Rule Amendment in the history of the Amendment. As cogently explained by Justice Swepston in his concurring opinion in Fountain City Sanitary District v. Knox County Election Commission:

[T]he so-called Home Rule Amendment was never intended to apply to any type of governmental corporation other than the cities of the different classes. In addition to what is stated in the opinion prepared by Tomlinson, J., it will be revealing to examine the Journal of the Constitutional Convention Proceedings, beginning on page 1038 and running down through 1059. A perusal of these pages will disclose that the word "cities" and the word "counties" are used throughout the discussion and that the word "municipality" appears only two or three times. There is not the slightest indication that there was any

For the foregoing reasons, the Court concludes that the ESA Act is not applicable to Plaintiffs for purposes of the Home Rule Amendment, the Home Rule Amendment is not implicated by the ESA Act, and Plaintiffs' claim that the ESA Act is unconstitutional under the Home Rule Amendment, therefore, fails as a matter of law.

## IV. CONCLUSION

For the reasons stated herein, the Court affirms, albeit on different grounds, the judgment of the Court of Appeals that Plaintiffs have standing to pursue their constitutional challenge to the ESA Act under the Home Rule Amendment. The Court, however, reverses the judgment of the Court of Appeals on that claim and holds that the ESA Act is not implicated by the Home Rule Amendment and so is not rendered unconstitutional pursuant to that Amendment. Thus, the judgment of the trial court with respect to Plaintiffs' claim under the Home Rule Amendment is vacated, and the case is remanded to the trial court for entry of a judgment dismissing that claim, for further proceedings consistent with this opinion, and for consideration of Plaintiffs' remaining claims. Costs on appeal are taxed to Plaintiffs, for which execution may issue if necessary.

_____
ROGER A. PAGE, CHIEF JUSTICE

---

thought in the minds of the different speakers of any type of municipality other than a "city" of one or the other class.

Therefore, it is plain why the caption to Section 9 reads as follows:

Power over local affairs—Home rule for cities and counties— Consolidation of functions.——

It, therefore, seems to me to be utterly nondeterminative that drainage districts, water districts, sanitary districts, school districts, etc., may properly be designated quasi municipal corporations or that many of them have a number of powers that are similar to or the same in substance as certain powers possessed by cities. They are simply not included within the intention of the framers of the Home Rule Amendment.

308 S.W.2d 482, 486 (Tenn. 1957) (Swepston, J., concurring).